THE PITTSBURGH, FT. WAYNE AND CHICAGO RAILWAY CO. AND THE PENNSYLVANIA RAILROAD CO. v. LOOMIS BRIGHAM.

A railroad company is not liable for injuries occasioned by its buildings or structures being blown down by storms, where it has used that care and skill in their structure and maintenance which men of ordinary prudence and skill usually employ; and it is error in such cases to charge the jury that the company is "bound to guard against all storms which can reasonably be anticipated."

ERROR to the District Court of Stark county.

On the 5th of December, 1870, a violent storm blew down part of the roof of the Massillon station-house, belonging to the Pittsburgh, Ft. Wayne and Chicago Railway Company, and Brigham was seriously injured by the falling materials.   At the time of the occurrence the Pennsylvania Railroad Company was operating the road, and using the building, as lessee under the first-named company, under the statute which makes the lessor company equally liable with the lessee for injuries occasioned in using and operating the road.   Brigham brought his action against both companies, charging the lessor company with negligence in not constructing and securing the roof of the building in a proper and substantial manner, and the lessee company with negligence in maintaining and using it in its insecure condition.   The negligence was denied by both companies, and the cause was tried to a jury, who returned a verdict for the plaintiff.   A motion for a new trial, on

the ground that the verdict was against the law and the evidence, was overruled by the court, and judgment was entered upon the verdict.    This judgment was subsequently affirmed in the district court, and the plaintiff in error now seeks to reverse the judgments of both courts.

A bill of exceptions, embodying all the testimony, forms part of the record.    From this it appears that the roof in question had stood eighteen years at the time of its fall, and there was a conflict of testimony as to whether it was constructed on a proper plan and properly fastened for the purpose of resisting storms—some eight or ten experts testifying in the affirmative and some four or five in the negative.    There was also a conflict of testimony as to the severity of the storm, as compared with other storms which had previously occurred in the locality.

At the close of the testimony the defendants requested the court to instruct the jury that if the roof of the station-house, at the time of the accident, was of sufficient construction and strength to withstand the ordinary and common storms of the locality the defendants were not liable; that the defendants were not bound to foresee and provide against extraordinary storms; and that they were not liable unless they had failed to use that care which prudent men ordinarily employ in such matters.

These instructions the court refused to give as requested, and instead thereof gave the following:

" The defendants were guilty of negligence if they failed, in constructing or maintaining said station-house, to use that degree of care which a man of ordinary prudence is accustomed to employ in constructing or maintaining a building for his own use for the same or like purposes, to guard against danger from storms of wind, which might reasonably have been anticipated.    If they used that care, they were not negligent and can not be held liable, although they are corporations.

" And further, you must find that the storm which caused the injury was not unprecedented in that locality, but was

of such character that it might reasonably have been expected to occur at that place.

" The defendants were bound to provide against storms which could reasonably have been anticipated, though likely to occur but rarely.

" But defendants were not bound to provide against a storm of wind so extraordinary in power that no experience could have anticipated its occurrence. And if the storm in question was of this character, the plaintiff can not recover."

This instruction of the court, it is now claimed, was erroneous. There are also various other grounds of error alleged, but it is not necessary to state them in this report.

*J. T. Brooks*, for plaintiff in error:

The court declared it to be the duty of the defendants to provide against storms which, in regard to their violence, were rare in that locality; and no jury could be impaneled which would not understand from the charge as given, in connection with the refusal to charge as asked, that unless the storm in question was " so extraordinary in power that no experience could have anticipated its occurrence" the defendants were liable.

But it is useless to waste words upon this point. No one can read the charge without being fully impressed that it would convey to the minds of the jury the idea that the defendants were liable, unless the storm in question was unprecedented in violence.

To be bound to provide against extraordinary storms, is to be obliged to use extraordinary or the highest degree of care, and I undertake to say that no such duty rested on the defendants in this case.

While common carriers of passengers have been held to the highest degree of care, in respect to its vehicles, in favor of a passenger, it has been held that the rule does not extend to the accessories of their business. *Crafter v. The M. R. R. Co.*, 1 Com. P. (Eng. Law Series,) 300; *Common v. E. C. Ry. Co.*, 4 Hurlst. & Nor. 781; *Toomey v. L. B. &*

*S. C. Ry. Co.*, 3 C. B. (N. S.) 146; *Withers* v. *N. K. R. R. Co.*, 3 Hurlst. & Nor. (Am. ed.) 969; 2 Redfield on Railways, 183, sec. 176.

*W. A. Lynch,* for defendant in error:

The question of the care to be employed in securing buildings against storms naturally divides itself into two parts: First, as to the forethought to be displayed in anticipating, or thinking in advance of the storms that may occur in that particular locality. Second, the skill to be exercised in providing against such storms.

The court treated the question in this way, and said: "And further, you must find that the storm which caused the injury was not unprecedented in that locality, but was of such character that it might reasonably have been expected to occur at that place."

This was upon the point, "What degree of forethought must be shown in anticipating storms?"

Further, the court said: "The defendants were bound to provide against storms which could reasonably have been anticipated, though likely to occur but rarely;" and, "Defendants were not bound to provide against a storm of wind so extraordinary in power that no experience could have anticipated its occurrence; and if the storm was of that character the plaintiff can not recover."

The court speaks of the kind of storms against which provision is to be made, but not a word as to what kind of provision. There is a broad difference between making provision against a storm and making the building secure against one.

The parts of the charge complained of simply held the defendants to that degree of forethought which would anticipate storms that reasonably could be anticipated, though likely to occur but rarely, but they were excused from anticipating or making any provision for a storm that no experience would have enabled the defendants to anticipate.

Upon the other point, "What skill and degree of care must be exercised in providing against storms?" the charge

was clear, and quite as favorable as defendants had a right to claim.

WELCH, C. J. In the first paragraph of the court's instruction we think the law of the case is correctly stated. If the defendants, in the construction and maintenance of the building, used that degree of care which men of ordinary prudence are accustomed to employ in like business, they were not liable. Had the court stopped with this proposition there clearly would have been no error in the charge. But the court went further, and told the jury that the defendants were bound to provide against all storms which could reasonably have been *anticipated*, and by plain implication told them that the defendants were bound to provide against all storms that were not " *unprecedented*," or that were of a kind that had ever happened within the range of human " *experience*." Taken by itself, this latter part of the charge is clearly erroneous, and in conflict with the rule as first and, as we think, correctly laid down by the court. The whole charge, taken together, to say the least, was calculated to mislead the jury. Two rules, apparently in conflict with each other, were laid down for their guidance, and it is impossible to know which they followed. The *general custom* of prudent persons in such cases, and not the *absolute requirements* of the occasion, is the true standard by which the defendants should be tried. They were only bound to come up to the fair average of careful and prudent men.

There are other assignments of error made in the case, but we only deem it necessary to say of them that we do not deem them maintainable.

*Judgment reversed, and cause remanded.*