The McCormick Harvesting Machine Company v. Hays.

*W. F. Pidgeon*, for appellants.

*C. M. Wetzel*, for appellee.

---

No. 10,740.

THE McCORMICK HARVESTING MACHINE COMPANY *v.* HAYS.

SALE.—*Warranty.—Breach of.*—A reaper was sold with a warranty that it would work well, the purchaser upon a day's trial to give the seller notice and allow time to put it in order, and if it could not be made to work return it. It failed to operate well; the notice was given, and, no one appearing to put it in order, the purchaser, after the lapse of a week, returned it, meantime continuing to use it until he had cut his grain.

*Held*, that there was a breach of the warranty, and that the seller could not recover for the machine.

From the Hendricks Circuit Court.

*L. M. Campbell*, for appellant.

*J. V. Hadley, E. G. Hogate* and *R. B. Blake*, for appellee.

BLACK, C.—The appellant sued the appellee upon a written contract for the sale of a reaping machine, to recover the purchase-money therein promised. Issues were formed which were tried by the court. A special finding was rendered upon request. The appellant excepted to the conclusion of law, and filed a motion for a new trial, assigning as causes that the finding was contrary to law, and that it was not sustained by the evidence. The motion was overruled, and judgment was rendered for the appellee. The conclusion of law and the overruling of the motion for a new trial are assigned as errors.

The court stated the facts and its conclusions of law thereon as follows:

"1st. That on the 1st day of June, 1882, the plaintiff sold to the defendant a reaping machine for the price and sum of one hundred and forty dollars, and that on the same day the defendant executed to the plaintiff his written contract to pay the said sum of one hundred and forty dollars on September 1st, 1882, which contract is filed with the complaint herein, and is, in words and figures, as follows, to wit:

"'McCormick Harvesting Machine Company will ship for the undersigned, on or before June 10th, 1882, one of their latest improved imperial machines, including the usual extras, consigned to the care of Christie & Hicks at Danville, the undersigned agreeing on delivery of the machine to pay the McCormick Harvesting Machine Company one hundred and forty dollars cash, September 1st, 1882, with interest thereon from August 1st, 1881, until due, and at the rate of eight per cent. per annum from maturity until paid, the machine to be warranted as per following warranty, a copy of which I have this day received: This machine is warranted to be well made, of good material, and durable with proper care. If upon one day's trial the machine should not work well the purchaser shall give immediate notice to said McCormick Harvesting Machine Company or their agent, and allow time to send a person to put it in order. If it can not then be made to work well, the purchaser shall return it at

once to the agent of whom he received it, and all cash and notes received in settlement will be refunded.

· (Signed)        'HENRY H. HAYS.

"'Dated the 1st day of June, 1882.'

"2d. That the plaintiff delivered to the defendant, at the time of the said sale of said machine, a written warranty, providing, among other things, that if said machine did not work well upon one day's trial, then the defendant should give immediate notice thereof to the plaintiff or his agents, and to allow the plaintiff time to send a person to put said machine in order, and that if it then could not be made to work well, then the defendant should at once return the same to plaintiff, and that the plaintiff should return to defendant the notes and money he may have given for the same.

"3d. That on the evening of the 29th day of June, 1882, defendant began to use said machine in cutting wheat, when he cut a few rounds; that he used the same all the next day; that said machine did not work well, in this, to wit, that it could not be turned properly; 2d, that it did not rake the wheat off properly; 3d, that the side draft of said machine was too heavy.

"4th. That on the next morning, July 1st, before sunup, the defendant mailed a letter from New Winchester, directed to Christie & Hicks, plaintiff's agents at Danville, Indiana, notifying them that said machine did not work well; that he knew that the mail would not leave New Winchester until about twelve o'clock that day, and that it would not reach Danville until about two o'clock in the afternoon; that he then discharged a part of his hands, and continued to cut wheat slowly during the day, while waiting for the plaintiff's agent, and that he finished cutting his wheat in the evening of that day, having cut fifteen acres in all, and that he did not use said machine any more.

"5th. That the said letter of the defendant was received at Danville by said Hicks in the evening, about dark, of the day

it was posted by defendant, and that on the evening of the same day, about an hour before sundown, and after defendant had finished cutting his wheat, the said Christie was riding by defendant's house, when defendant called to him and notified him that said machine did not work well; and that said Christie did not offer to return next week and put said machine in order and make it work; that there was wheat in defendant's neighborhood still uncut during the week following, in which the said machine might have been further tested.

"6th. That the plaintiff nor her agents did not send a person to put said machine in order or make it work well, and that on Saturday, July 8th, 1882, the defendant returned said machine to Christie & Hicks, plaintiff's agents at Danville, and left it near their place of business, and has not since exercised any control over the same, but that the plaintiff, through her agents, refused to accept the same, and has not since assumed any control or ownership of the same.

"From the above facts the court draws the following conclusions, to wit:

"1st. That it was incumbent on the plaintiff to send a person to put said machine in order during the week after the reception of the notice that it did not work well; and that the plaintiff not doing this, the defendant had a right to return the machine on Saturday, July 8th, 1882, to the plaintiff's agents; and that having done so the defendant is not liable on the note or contract to pay for said machine."

It is contended for the appellant that upon a fair construction of the contract, the facts stated by the court do not show that the appellee gave the appellant reasonable time and reasonable opportunity to put the machine in working order; that the appellee having finished the cutting of his own wheat before the appellant received the notice, the appellant had no reasonable opportunity within the time granted to remedy the defects.

The contract did not require that the purchaser should cease

The McCormick Harvesting Machine Company *v.* Hays.

to use the machine after one day's trial if it did not work well, but it required that he should then notify the appellant or her agent; and it did not require that for the trial of the machine the purchaser should use it in his own grain or grass, or upon his own land, or that he should have or preserve any grain or grass of his own in which the person to be sent by appellant might test the machine, but it required that he should allow time to send a person to put the machine in order.

We can not say, under the circumstances shown by the finding, that the appellee was not acting within the contract, in proceeding on Saturday, in the manner stated, to cut the remainder of his wheat while awaiting the coming of the agent of the appellant, or that he thereby waived the warranty.

Without the showing of an express agreement to wait longer than a week, or circumstances from which such an agreement might be implied, or that the appellant was in any way prevented or excused by the appellee from trying to make the machine work well, the facts stated would authorize a conclusion that the appellant was allowed the time and opportunity required by the contract.

There was evidence tending to prove all the facts found by the court. There was some evidence introduced in behalf of the appellant tending, in support of her reply, to show that the appellant's agents offered to put the machine in order, after the receipt of the notice and before the return of the machine, and that they were not permitted to do so by the appellee; but this was contradicted by evidence on the part of the appellee. We can not interfere with the result reached in the trial court upon conflicting testimony.

The judgment should be affirmed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be affirmed, at appellant's costs.