MOORE v. THE WABASH, ST. LOUIS & PACIFIC RAILWAY
COMPANY, *Appellant.*

**Negligence:** RAILROAD : CROSSING. Where, by means of an induce-
ment or invitation, expressed or implied, held out to the public by
it, a railroad leads the public to use a crossing or way over its track
in passing to and from its depot grounds, it is bound to keep such
crossing or way reasonably safe for travel.

| 84 | 481 |
| 58a | 379 |
| 84 | 481 |
| 126 | 389 |
| 84 | 481 |
| 88a | 204 |

*Appeal from Buchanan Circuit Court.*—B. R. VINE-
YARD, Esq., Special Judge.

**AFFIRMED.**

*W. H. Blodgett* and *Geo. S. Grover* for appellant.

(1) The court erred in refusing to instruct the jury
that plaintiff was not entitled to recover. *Vanderbeck
v. Hendry,* 34 N. J. (Law) 472 ; *Sweeney v. Old Colony,
etc.,* 10 Allen 372 ; *Hardcastle v. South Yorkshire, etc.,
Ry.,* 4 H. & N. 67 ; *Pierce v. Whitcomb,* 48 Vt. 127 ;
*McAlpin v. Powell,* 70 N. Y. 126 ; *Reulston v. Clark,*
3 E. D. Smith 366 ; *Parker v. Portland Pub. Co.,* 69
Maine 173 ; *Bancroft v. B. & W. R. R.,* 97 Mass. 275 ;
*Forsyth v. B. & A. R. R.,* 103 Mass. 510 ; *Burns v. B. &
L. R. R.,* 101 Mass. 50 ; *Severy v. Nickerson,* 120 Mass.
306. (*a*) The teamster was not using the private grounds
of appellant by reason of any invitation or inducement
on its part, either expressed or implied. At most, there
was a mere passive acquiescence in such use. (*b*) Even
if the teamster was there by any implied invitation or
inducement, the accident was not the result of it, but
resulted wholly from his own imprudence and folly in
abandoning the safe way provided by appellant for his
use, and in attempting to travel over ground which he
knew to be unfit for the purpose for which he attempted

to use it. (c) The proximate cause of the injury was the negligence of the teamster, and was not the result of any failure on appellant's part to perform any public or private duty. *Henry v. St. L., K. C. & N. Ry.*, 76 Mo. 288. For the reasons given, the first instruction asked by defendant and refused by the court, should have been given. (2) The second instruction given for plaintiff was erroneous, because it assumed the existence of certain facts which were not in evidence, and ignored the evidence in the case. (3) The first instruction given by the court of its own motion was erroneous, because it was without evidence to support it. There was no evidence that the macadamizing on the so-called Monterey street was put in there by the St. Louis, Kansas City and Northern Railway for the use and convenience of those having business with said company.

*Doniphan & Reed* for respondent

(1) The court committed no error in refusing to give defendant's instruction that plaintiff was not entitled to recover. The theory of plaintiff's case, as shown by his petition, was that defendant had prepared a crossing at a point where its open, public depot grounds touched its track, for the public to go on and off its said grounds, and over its said track, and there was testimony sustaining and tending to sustain this theory, and if this is so, from the admission of opposing counsel, no error was committed in this action of the trial court. (2) A railroad company having a public duty to perform, is bound to make the approaches over its own premises, to its depot, safe and convenient for those transacting business with them. *Tobin v. R. R. Co.*, 59 Me. 187 ; Thompson on Carriers, 106. (3) A railroad company which holds out an inducement or invitation "*express or implied*," to the public, to enter and leave its depot grounds, by a way, or crossing, or road, by means of which the public are induced to and do pass upon and off from its said

depot grounds, is bound to make and keep such way, or crossing, or path, reasonably safe for such travel. *Bennett v. R. R. Co.*, 102 U. S. 577 ; *Sweeney v. Old Colony R. R. Co.*, 10 Allen 373 ; *Barrett v. Black*, 56 Me. 505 and 506 : *Tobin v. R. R. Co.*, 59 Me. 188 ; *Carleton v. Franconian Iron and Steel Co.*, 99 Mass. 216 ; *Caughtry v. Woolen Co.*, 56 N. Y. 126 ; *Latham v. Roach*, 72 Ill. 179 ; *Gillis v. Pa. R. R. Co.*, 59 Pa. St. 120 ; Thompson's Car. Pas. 106, 107 ; Wharton's Law of Neg., secs. 657, 658, 821. The principle we contend for also finds ready recognition in the following cases cited in defendant's brief : 53 Mo. 43 ; 29 Ohio St. 364 ; 69 Me. 173. A railroad company, as to the property it owns and uses for the purpose of accomplishing its *public, corporate* purposes, is subject to restrictions and limitations which do not incumber the *private* owner of premises. *Pitts v. Ft. W. & C. R. W. Co.*, 29 Ohio St. 369, 370. The public character of a railroad company constitutes a standing public invitation, to all having business with them, to come upon their grounds. And the court will note, that all the cases say an invitation "express or implied" is sufficient. The invitation may be *inferred*. *Nicholson v. Lancashire & C. R. R.*, 34 L. J. Ex. 84 ; *Indermaur v. Dames*, L. R. 1 C. P. 274, 2 C. P. 311 ; *Smith v. London & St. Katharine Docks Co.*, L. R. 3 C. P. 326 ; *Holmes v. N. E. R. W. Co.*, L. R. 4 Ex. 254. (4) The question of negligence in this case, under the law and facts, was one for the jury. Where there is conflict of evidence on the question of proximate cause, the case is one for the jury. *Henry v. R. R.*, 76 Mo. 293. (5) The instructions given by the court were proper and are not objectionable on the grounds urged by defendant.

EWING, C.—The plaintiff sued the defendant for damages for killing two mules, and alleged, amongst other things, that defendant's track passed diagonally across Monterey street, in St. Joseph. That the grounds surrounding their depot were open public grounds of de-

fendant, where it transacted its business with the public; that it attempted to macadamize a part of its grounds for the purpose of inducing and enabling the public doing business with it to pass on and off of its grounds and over its track with ease, safety and facility; that it carelessly and negligently left the iron rails of its track protruding several inches above the ground, forming thereby an obstruction to the easy and safe passage of vehicles from said depot grounds; that plaintiff's team was employed in hauling wood from the depot, which had been shipped by defendant and delivered to one Perry; that plaintiff's team with a load of wood was attempting to pass over the grounds and across the defendant's track at the place prepared by defendant for crossing, and became stalled and was run over by defendant's trains and injured, etc. The answer was a general denial and an allegation of negligence on the part of the plaintiff.

A witness on the part of the plaintiff testified that the following plat "showed pretty well the situation at the place spoken of." That the blue in the plat was macadamizing placed there by defendant; that plaintiff's team was hauling wood from defendant's track at H, where he loaded, and which had been delivered by defendant to one Perry, as consignee, to be delivered to persons in the city to whom it had been sold by Perry. That the main traveled way was on the macadam along the line of the defendant's track to Monterey street, and thence across the bridge track at E. That at the point, I, where the accident occurred, was a place used as a crossing by the 'buses and carriages and wagons, which were going from and coming to the defendant's depot and grounds upon business with defendant, such as delivering and transporting passengers to and from defendant's depot and grounds, and delivering and receiving freight to and from defendant; that this crossing, or traveled way had been used similarly for years, with the knowledge of defendant, and without objection. The evidence further tended to prove the allegations of the

Moore v. The Wabash, St. Louis & Pacific Ry. Co.

petition, and some of the witnesses in relation to the alleged crossing, testified as follows: "Teams passed over the vacant grounds and passed over the track where some rock had been thrown in. Some macadamizing had been thrown in there where the team was attempting to cross when hit. It extended out five or six feet from the rail, and was exposed to view. *It looked like it had been put down as macadamizing to make a crossing.* There is a *well defined road crossing the railroad there,* and going *into defendant's depot,* used by teams; it crosses the track north of the depot, and went down west of it, towards the freight depot." ."*This crossing* had been used *for a long time,* ever since he had done business at the depot he had used it, over a year. My wood passed over *this crossing* for two years;" that parties· "passed *over the track at that point* continually after the mules were hurt." "*I know the crossing.* I am a teamster and hauled *over it for several years.* The *crossing* is not good. The macadamizing was new there, not down long, and the rails of the track stuck up." "*This track at the crossing* was made by 'buses and baggage wagons going to and from the depot." "All teams going east to Eighth street went *over the track where the team was stalled.*"

I. The theory of the trial court was, that defendant was liable if it had held out an inducement to the public to use the crossing in question, and negligently thereafter failed to keep such crossing in safe condition for such purposes. Upon this theory the evidence was heard and the instructions given, which, taken altogether, we think, fairly and fully presented the case to the jury. True, the court refused certain instructions asked by the defendant, but gave, of its own motion, such as covered the points presented in those asked by the defendant. The defendant demurred to the evidence, which was, we think, very properly overruled, as there was sufficient evidence to submit the questions to the jury, provided the law was properly declared. The question then arises, under the pleadings and evidence in the case, whether the law was properly declared.

II. Wharton, in his work on the Law of Negligence (section 821), says: "In prior sections we have had occasion to define the relations of railway companies to persons, whether customers, visitors, or trespassers, passing over their platforms and approaches. Such approaches must be kept in safe condition for the use of persons having business with the company, as well as for its particular customers. It has been even said, that 'they' (railroad corporations) 'are bound to keep in a safe condition all portions of their platforms, and approaches thereto, to which the public do or would naturally resort, and all portions of their station grounds reasonably near the platform, where passengers, or those who have purchased tickets with a view to take passage on their cars, would naturally or ordinarily be likely to go.'" Dillon, C. J., in *McDonald v. R. R.*, 26 Iowa 124; 29 Iowa 170; 39 Ind. 586. "So far as concerns persons having business with the company, this is indubitably true. So far as concerns persons, however, who may visit the platforms or grounds of the company from curiosity, or for personal convenience, without any business with

the company, or reasonable duty calling them to its premises, the company is liable only for such defects as are in the nature of traps." Section 822. "For what is required of the company is not the warranty of the safety of everybody from everything, but such diligence as a good business man is in such matters accustomed to use. Railway platforms are not made for the use of the public, and if persons not invited, and having no business with the company, crowd on such platform, and an injury occurs to one of them in consequence of a defect in the platform, he has no redress."

The evidence in the case at bar strongly tends to show that there was some sort of crossing where the injury occurred, used by those having business with the company, in transporting passengers and freight to and from its depot and grounds, and that that fact was necessarily known to the company, and the crossing used for a long time without objection from the defendant, and at least tacitly with its consent. The evidence strongly tends to show that the injured team was on defendant's grounds, in pursuance of business being transacted with the company. These facts would seem to bring this case within the rule founded in justice and necessity, and illustrated in many adjudged cases, that where one is not a mere licensee, but engaged with the consent of the railway company in a transaction of common interest to both, and is injured by a failure of the company to maintain its grounds and crossings and depot, in a reasonably safe condition, the railway would be liable. *Holmes v. N. E. Ry. Co.*, 4 Ex. L. R. 254; 1 Thompson on Negligence, 313; *Bennett v. Ry. Co.*, 102 U. S. 577. On the other hand, no duty is imposed by law upon the owner to keep his premises in a condition to prevent injury to those who come there solely for their own convenience or pleasure, or those who are not either expressly invited to enter, or induced to come upon them by the purposes for which the premises are appropriated and occupied, or by some preparation or adaptation of the place for use

by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter. *Straub v. Soderer*, 53 Mo. 38. In other words, a mere passive acquiescence by an owner or occupier in a certain use of his lands by others involves no liability, but if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use, and for a breach of this obligation he is liable in damages to one injured thereby. *Sweeny v. Old Colony and Newport R. R. Co.*, 10 Allen 368, and authorities there cited; *Latham et al. v. Roach*, 72 Ill. 179; *Pittsburg, Ft. W. & C. R. R. Co. v. Brigham*, 29 Ohio St. 374.

The same doctrine is maintained in *Vanderbeck et al. v. Hendry*, 34 N. J. 467, and in *Illinois Cent. Ry. Co. v. Godfrey*, 71 Ill. 500, and, indeed, there is no variance in the rule laid down in any authority cited by the plaintiff or defendant, nor anywhere else, that I have been able to find. The only controversy being that the facts in evidence do not justify the instructions given by the circuit court, we are clearly of opinion that the evidence warranted fully the instructions given, which are upon the theory that a railroad company which holds out an inducement or invitation to the public to enter and leave its depot grounds, by a way, or crossing, or road, by means of which the public are induced to, and do, pass upon and off from its said depot grounds, is bound to make and keep such way, or crossing, or path, reasonably safe for such travel, and that that invitation or inducement may be express or implied from the acts and conduct of the railway company.

The judgment of the circuit court is affirmed. All concur.