Frazier, J.
In the case of Orman F. Ellis v. The New York, Chicago & St. Louis Railroad Company, the plaintiff who was a locomotivo engineer, in the employ of the company, and engaged in running trains upon the road of the defendant, in his amended petition charges, that on the 23rd day of May, 1890, while attempting to pass over a bridge of the defendant, over Coon Creek, (which, we learn, is a short distance east of the Ohio and Pennsylvania state line), “.it broke down, and he and his engine and train were precipitated into the creek, and he was thereby injured.”
He charges that the company was negligent in the construction, repair and maintenance of the bridge, and that the defendant company, its agents and servants, knew, or should have known, (so that in law they were charged with knowledge,) that the bridge was insecure and insufficient and not such as the company was in law bound to erect and main-, tain.
Counsel for the plaintiff in-error, upon the hearing in argument, selected a limited number of the numerous exceptions that were taken during the progress of the trial, and submitted his case upon those propositions. While the nature of the questions submitted, required an examination of the whole record, and we have, made such an examination, we have made it solely with a view of ascertaining what portion. of the record has a bearing upon the questions he has- *706 urged to us, and no for the purpose of discovering other errors not urged m argument. I shall refer probably to most of the propositions which he has urged, and any that I may not refer to,will be because in the judgment of the members constituting the court, they are substantially answered by those to which I shall refer, and because we find nothing wrong, so far as those items are concerned.
In referring to the record, I shall refer to the numbers of he paging. It is not to be understood that what I say, and what we have examined, is confined to the page referred to, but in connection therewith to what appears upon the preceding and succeeding pages, so far as it has any bearing or throws light upon what is upon the page to which I refer.
As I shall have to refer to the pages, it will probably be a little tedious, as I have to turn through this voluminous record§
The first claimed error urged is upon the seventh page of the record. Samuel Work, a witness upon the stand, is asked: “From whom he received his instructions, ” (referring to the replacing of the bents in the bridge). He says: “From the assistant supervisor, I believe you would call it, of bridges, Mr. Oppelt. ” Then this question is asked and exception is entered to it.
“Q. At that time, what was done, if anything, toward making preparations for the middle bents?”
After remarks by counsel and replies by the court, the ■c'itness was permitted to state that at the same time the bents upon the two ends of the structure were repaired or replaced, timbers were framed, or partly framed, for the middle bents; and that-those timbers were upon the ground, and that they remained there at the time of the accident. In this we do not perceive any error to the prejudice of t-he plaintiff in error, t-he company. It was a part of the history of the repairing or replacing of the structure.
On page 140 of the record, Adam Young testified he was a carpenter, bridge builder and so forth. He is put upon the stand by the plaintiff. Without referring to what he says,by way of qualification as an expert,this question is asked him:
“What is the ordinary foundation of a wooden trestle bridge; upon what should such a bridge be erected, if you know?”
(Counsel for defendant object; objection overruled and counsel for defendant except-.)
“A. It is on stone or piling.”' out, and the motion overruled. that in the charge of the court,
This was asked to be ruled It may be well to say here, the judge trying the case *707 defined the duty of the company in the erection of the bridge, to be that of ordinary care, and this inquiry is as to the ordinary construction, and the defendant to that objects. We think the objection is not well taken.
Again, on page 148, is a kindred question. Frank Morrell, a witness, gives substantially the same testimony. That is, that bents are generally placed on stone foundations.
The next claimed error is on page 167 of the record. Dr. C. C. Booth, after describing the injuries to the plaintiff, as he found them, and stating the tests w’hich he had made, is asked this question:
“Q. Now,Doctor, what is your opin on, as to whether this injury is permanent or otherwise, that he has received?”
Counsel for defendant object.
The Court: — He may state whether his present condition is liable to be oermanent.
Counsel for defendant except.
“A. To the best of my knowledge and belief the man is permanently injured.
“Q. Are you able to state whether it is liable to be progressive or not? A. I think it is. I think he is likely to develop other symptoms of a nervous nature—
“Counsel for defendant object to the answer.
’‘The Court — I think you may pass that for the present, and the answer may be excluded.”
We see nothing in these rulings to the prejudice of the plaintiff in error.
The next question to which I refer, is on page 266 of the record. George Steenberg, a witness testifying as an expert or skilled man'is inquired of as follows:
“Q. Tell the jury as near as you can, to what extent these old bents that were removed were decayed?
“Counsel for defendant object, for the reason that they have now proved that these bents were taken out two or three months before, and could not have cut any figure in the accident.
“The Court — Do you propose to prove that the timbers that were taken out were partially decayed, at least?
“Mr. Northway — Yes, sir.
“The Court — And from that you want the.jury to infer that those that were left in were like them?
“Mr. North way — The same kind of timber; yes, sir.
“Mr. Sanford — I will confine my question to the timbers that were cut off and removed from those old bents.
“The Court — As tending to show what the condition of the bridge was when it was repaired, you may inquire of the. witness, subject to objection.”
*708 Mr. Sanford, resuming: “Q. Mr. Steenberg, you may state, if you know, what condition the timbers that were taken from the old bents were in, at or about the time they were taken from the bridge?
“Counsel for defendant object; objection overruled and counsel for defendant except.
“A. Those that I saw were partially decayed.
“Counsel for defendant object to the answer, and ask to have it excluded; overruled, and counsel for defendant except.
■ “Q. To what extent, as near as you can state?
“Counsel for defendant object to the answer and ask to have it excluded; motion overruled, and counsel for defendant except.
“A. So that the corners cf the timber were gone; they were not square; not all of the timbers.
“Counsel for defendant object to the answer and ask to have it excluded; motion overruled, and counsel for defendant except.
“Q. Can you state how far in this rot was? A. No, sir; I cannot. ”
In this we find no prejudicial error.
The next question is found on page 600 of the record. The witness is George Eday, being examined by Mr. Northway, and this commences a class of exceptions which requires a reference to other portions of the record.
It is shown in the testimony that there was a highway bridge, near this railroad bridge, and the testimony shows that the track of the railroad upon the bridge was substantially ten feet higher than the track of the highway upon the highway bridge. The question objected to is:
“Q. What portion of the highway bridge was carried off, if any?
“Counsel for defendant object to it as immaterial.
“Mr. Northway — We want to show that it was not carried off. We have measurements from the engineer that it was of a certain height.
“The Court — I think he may answer.
“Counsel for defendant except.
“A. There was no portion of it.
“Counsel for defendant object to the answer and ask to have it excluded; motion overruled, and counsel for defendant except. ”
On page 607 of the record H. H. Mallory is asked:
Q. What, if any, portion of the bridge was disturbed by the wirtr r? (Referring to the highway bridge.)
*709 “Counsel for defendant object; objection overruled, and counsel for defendant except.
“A. None that I know of.
“Counsel for defendant object to the aLswer and ask to have it excluded; objection overruled.and counsel for defendant except. ”
While here,I will proceed with another question, which is somewhat kindred. Henry Oppelt, whose position in the employ of the company is shown to be assistant supervisor of bridges, was called as a witness, and on page 285 of the record he testified, in substance, that at the time of the rainfall he was at Dunkirk, which is sixty or seventy-five miles from Coon Creek. He, as a witness for the defendant company, is permitted to state in chief what he saw as to the effects of the flood, starting from Dunkirk and coming to Coon Creek. The point to which I desire tc call special attention is to the question: “What wash-out do you know of in that stream the night and morning preceding this accident, nearer to Coon Creek than North East?
“Counsel for defendant object; objection overruled and counsel for defendant except.
“A. At Springfield, about- three miles east of Coon Creek, where our bridge crosses a gulley, there is a dam immediately above us, and that was washed out, and there was more or less washing done in under this bridge.
“Q. That was about three miles east? A. Thatwas about three miles east.
“Q. What-other wash-outs do yon know of in that stream, in the vicinity of Coon Creek? A. There was a great deal of washing and high water at Girard and Elk Creek.”
On page 578, when the defendant rested, the plaintiff recalled Mr Oppelt for further cross-examination, and he was asked
“Q. Are you the witness who spoke of a dam going out east of the Niclde Plate bridge two or three miles, on this night- of the 23rd of May? A Yes, sir.
“Q. Where was it? A. At Springfield.
“Q Whose dam was it?”
He is farther i .quired of, in order to locate the dam and make its location definite.
Beginning on page 634 Jospeh Ellis is called, and he testifies that he lives at Springfield, Erie county, Pa-., and is .inquired of as to what official position, if any, be has held recently. He testifies that he held the office of Road Commissioner.
“Q. How long, and when? A. From 1889 to 1892.
*710 “Q. How Tong have you been acquainted with Coon Creek? A. Ever since I have been acquainted in that locality.
“Q. How many highway bridges, if any', are there within the vicinity of Coon Creek railroad bridge?
“Counsel for defendant object; objection overruled and counsel for defendant except.
“A. There were five on the stream.
“Q. How near to the railroad bridge is the first one south? A. I should judge from fifteen to eighteen rods. •
“Q. Are there any others in that direction, above the railroad? A. Yes, sir; there are two.
“Q. How far is the furthest one you speak of, from the railroad bridge? A. I should think it was over a mile; possibly a mile and a half.
“Counsel for defendant object to all of this.
“The Court — I think you ought to confine your inquiry to the bridge in controversy that they have given testimony upon; anything outside of that may be excluded.”
He is inquired of as bearing upon this question, as follows:
“Q. Were you at the wreck? A. I was there along towards noon of the day of the wreck.
“Q. WTiat damage, if any, was done to the bridge just south of the railroad bridge, by the storm of May 23, 1890?
“Counsel for defendant object; objection overruled and counsel for defendant except.
“A. There was not any.
“Counsel for defendant object to the answer and ask to have it excluded; motion overruled, and counsel for defendant except.
“Q. Are you able to state how high the water came up? A. No, sir: I could not say.
“Q. You say you live in an easterly direction frcm the railroad bridge? A. Yes, I live about two miles and a half or three miles east.
“Q. Who, if any one, owns a mill or mill-dam there in that vicinity? A. J. M. Strong.
“Q. What, if any, effect did this storm you speak of have upon that mill dam on this occasion?
“Counsel for defendant object; objection overruled, and counsel for defendant except.
'“A. It did not have any.
“Counsel for defendant object to the answer and ask to have it excluded; motion overruled, and counsel for defendant except.
“Q. Are there any other mill dams in that vicinity? A. No, sir.
*711 “The Court — I would say that this testimony is incompetent unless the jury find that this was the identical one referred to by Mr. Oppelt, and then it is only competent as bearing upon his testimony. ”
With this explanation as to the mill dam, it being in rebuttal and limited as the court has limited it, we see no error in its admission.
Turning back to page 360 of the record, William Hoffman, who was a locomotive engineer, and in the employ of’the defendant company, called as a witness on behalf of defendant, testified that he had been engaged in that service nearly twelve years, and the testimony shows he was the last engineer who run a train over this bridge, before it went down. He testified in chief as follows:
“Q. I wish to call your attention to the day that Coon Creek bridge went down. You remember that time, do you, now? A. Yes, sir.
“Q. You remember the fact, although you may not remember the precise day? A. Yes, I remember. I was the last man that crossed it, safely.
“Q. At what time did you pass over that bridge on the morning of the 23rd day of May, 1890 A. I should judge it was about 4 o’clock, or maybe a little after; I cannot exactly mind the time, now. It was just the break of day.”
He described his load, and then was asked:
“Q. On the morning of the 23rd, as you passed over that bridge, did you notice the water in the stream somewhat? A. Yes, I did.
“Q. How was it, as io whether the water filled the valley from bank to bank, or not?
“Mr. Northway — Let him describe it.
“Witness — Well, of course I could not tell the depth of it. T should judge it was about six feet.
“Q. How far did it spread out, with reference to the bank of the valley? A. Oh, probably a little over one hundred feet.
“Q. What did you notice, as you went over, as to whether the water was passing over the highway next south of the bridge? A. Well, it was just about going over that little bridge — there at one end of it. At one end I could see the water just dripping over a little.”
He is then inquired of as to the location of the bridge and its distance from the railroad bridge, and op page 366 of the record, on cross-examination, this witness says:
*712 “Q. And the water, you say, was about crossing the bridge on the highway, south of this trestle bridge? A. Yes, there is a little culvert there — what we call the bridge on the highway.
“Q. You noticed the water at that culvert? A. I noticed it running over one end a little.
“Q. Which end of the bridge was it? A. I think it was the west.
“Q. You think it was the-west end of the bridge? A. The west end of the bridge.
“Q. How near to the plank on the bridge was the water? A. Well, I could not tell you — you see I passed there kind c’ quick — I just noticed it, and that was about all. I could nut teH.”
He is then asked if he has noticed the bridge since, and he testified there was a rise in the highway in going from the west onto the bridge. The evidence shows that at the time of the trial here, there had been grav.l placed at the west end of the bridge, or its approaoh, so there was not so much, depression in the highway below the bridge, at the time of the trial, as there was at the time of the accident. This we find to be, substantially, all of the testimony given tending to justify the court below in admitting in rebuttal the testimony that the highway bridge was not washed out. It is unnecessary for me to say what the evidence is,as to the construction af,the highway bridge, its materials and the manner in which it Ss imbedded. It is sufficient to say that,to allow it to be shown that accidents or casualties had or had not occurred to other bridges or structures, would raise the question of care or the want of ordinary care in the erection of such other structures,and thus raise collateral issues tending to mislead the jury. We find in this record no evidence offered upon the part of the defendant company, showing that this bridge was disturbed, and the only use that the testimony that the highway bridge was not washed out could be used for, would be to allow the jury to infer, or counsel to argue, that because the highway bridge was not washed out, the defendant company was negligent in the construction and maintenance of the railroad bridge. In this we think the court below erred.
Turning to the testimony of Frank Moore, on page 56, after being inquired of by plaintiff’s counsel as to his knowledge and observation of the railread bridge, what he had seen and noticed as to the foundation of the center or creek bents, which remained in the structure until the time of the accident, he is asked in chief:
*713 “Q. Can you express that in any other way? A. Yes,'I could. I was putting a piece of tile in for Mr. Mallory at the time, and I had -to get my dinner close by there, and had to go up that embankment where that trestle is, and one day as I went for my dinner a train came along, and I waited until she passed over the bridge, and then I went up and walked on the track home.
“Q. You was standing, then, on the embankment? A. Yes, almost right under it, and I saw the trestle weave. The section foreman was there at work, and I met him, and I says, Mr. Clark—
(Counsel for defendant object.)
“Q. Who was the section foreman? A. His name was Clark.
“Q. Is he there yet, or where is he? A. He is there yet; yes, sir.
“Q. Do yon know whether he had been there some time before the time you speak of, or not? A. Oh, yes; he had been there seven or eight years, I think.
“Q. When was it that you spoke to him, with reference to the time when you went up the bank? ■ A. That very day, sir. I am pretty well acquainted with him.
“Q. What did you say to him about the bridge?
(Counsel for defendant object. )
“The Court — What is your objection?
“Mr. Hall — I claim, your Honor, that it is not at all competent.
“The Court — As tending to show notice to the company?
“Mr. Hall — As tending to show anything.
“The Court — Why not?
“Mr. Hall — For the reason that you might just as well go to Cleveland and tell the gate keeper; just exactly.
“The Court — Who should a party give notice to?
“Mr.Hall — They should give notice to the proper department, to some employe in the proper department. That man had nothing to do with bridges. You might just as well give notice to me, because I work for them.
“The Court — That must depend upon whether or not this foreman had anything to do with the bridges.
“Mr. Northway — We expect to show that this section foreman did have something to do with the bridge. If we do not show that, this may be ruled out.
“The Court — We can only say that unless that does appear, it would be incompetent.
“Judge Sherman — This was a year before any disaster, *714 and we object to it on that ground. We object to it also because of the lapse of time.
“The Court' — Subject to objection and exception he may answer.
“Counsel for defendant except.”
It is probably not improper for me to say here, that in the examination of this record, it is somewhat difficult to tell whether the record means that the evidence may be received and you may take your exception, or whether it is received subject to objection, and to be thereafter considered by the court, in which case it would be the duty of counsel objecting and desiring an exception, to call the attention of the court to the matter, after the evidence is in, in order that the court may make the ruling and the party have his exception noted; but in this instance we do not regard it as important which view is taken of the record — whether the court means the evidence may be admitted and you may have your exception, or whether it is admitted subject to further or future consideration and exception if admitted.
“A. I told him it was a pretty bad bridge. That is what I told him, and it was going to give out some time, and somebody was going down there with a locomotive or passenger cars; that is what I told him.
“(Counsel for defendant object to the answer and ask to have it ruled out; motion overruled,and counsel for defendant except.)
“Q. What did he say in reply, if anything?
“Counsel for defendant object; objection overruled, and counsel for defendant except.
“A. He said he had reported that bridge twice.
“Counsel for defendant object to the answer, and ask to have it excluded.
“The Court — That may be excluded for the present; but it may remain so far as the evidence has been given tending to show that he gave notice to the section boss.
“Mr. Hall — We except to that.”
On page 211 the plaintiff calls Thomas Clark, the section foreman. He is examined by Mr. North way. When Frank Moore was on the stand, counsel for plaintiff said if they did not show the section foreman had something to do with bridges, Moore’s testimony might be ruled out. After showing that he is the section foreman of the Nickel Plate Railroad, and that he will have been thus acting six years on the 18th of next July next after the trial, he is inquired of as follows:
“Q. And what part of the road is embraced in your section?
*715 A. It is located within about a mile of the east line of my section.
“Q. You mean Coon Creek bridge is? A. Yes, sir.
“Q. It is included in your section? A. Yes, it is in my section.
“Q. Prior to the accident, how often did you go ever the road? A. I went over the road sometimes twice a day, and once every day.
“Q. How did you travel over the road? A. I traveled with a hand car, and sometimes I would go on foot.
“Q. How often did you cross Coon Creek bridge, where the accident occurred? A. I could not tell.
“Q. How many times a day, or week, did you cross that bridge, before it went down? 4. I crossed it every day.
“Q- What were your duties, as section boss? A. My duty was to take care of that section, and have everything complete, and see if everything was all right.
“Q. Your duty was then, to see that the trains run safely over the road?- A. Yes, that is my duty.
“Q. If the track got out of surface, what was your duty in regard to that? A. My duty is to put it back where it belonged; where it was right.
“Q. Your duty was to observe the track and keep it in line and safe and sound for trains to run over? A. Yes, sir.
“Q. Suppose defects should occur in the track that you could not repair yourself, what was it your duty to do in regard to that? A. I would go to the'supervisor and report it.
“Q. Who was he? A. Mr. J. Rich was the supervisor.
“Q. What is his title — you are named as section boss; now, what is he named as? A. As Road Supervisor or Road Master — he is over us.
“Q. He is the Read Master? A. Yes, sir.”
Then he is inquired of as to who was the Chief Engineer, and who were the other officers over him, but there is nothing more upon this subject.
On page 271 of the record, Carl Neif was re-called on the part of the plaintiff and examined by Mr. North way. I will begin to read on page 270, although my-reference is to page 271.
*716 ■
*715 “Q. Did you ever have any conversation with Mr. Clark, the section boss, prior to the injury? A. No, sir.-
“Q. Did you ever hear anybody have any with him about it? A. Yes, sir.
“Q. Who was the party? A. Mr. Moore.
“Q. When was it? A. I do not know when it was.
‘‘Q. Was it before the accident? A. Yes, sir.
*716 “Q. What, if anything, did .Mr. Moore say to Mr. Clark about that bridge?
“Counsel for defendant object
■ “The Court — We think the evidence tends to show it was his business and part of his duty to keep watch of it, and report it, if there was anything weak about it — to this other department. That he had nothing tojdo with the fixing of the bridge, but the bridge department went on.and did the repairing. If we are correct in that, we think the evidence is competent.
“Counsel for the defendant except.
“A. I was not with Mr. Moore when he had this conversation.
“Q. You did not hear it? A. No, sir; I did not hear it.”
I refer to this more especially to show what the court said in the hearing of the jury, as to the authority which the section foreman had, and as to his duty under his employment. If the court below meant, as I .have indicated, that his ruling upon the question was final, and that his attention should not again be called to the matter before the party was entitled to his exception, then the defendant below had the question properly saved at that point in the record. Or if it was received subject to the objection • and the further consideration of the court, its attention sh mid, before the cas9 is closed, be called to it by the party objecting, that the court may rule upon it and his exception noted, before the party may avail himself of the exception.
The attention of the court should thus again be called to the question at the close of the plaintiff’s testimony, and a ruling made by the court and an exception then noted. Taking the testimony, as it appears in the record, as to-the duties and qualification of the section foreman, it does not require an educated or skilled engineer. The duties which he has to perform are those which can be performed by any laborer of common or ordinary intelligence. He is not supposed to have the education or judgment to pass upon the construction or sufficiency of a bridge; but assuming as we do, in disposing of this question (without so deciding), that notice to the section foreman was notice to the company, and that it .was his duty to communicate it, what communication would he make to his superior officer? What would he tell him? Frank Moore testified: “I told him it was a pretty bad bridge; that is what I told him, and it was going to give out some time, and somebody was going down therewith a locomotive or passenger cars; that is what I told him.”
The record shows it was the duty of the officers to whom *717 the report of the section foreman would be made, or by whom it must be received, before steps could be taken to rebuild, to make stated examinations of all the bridges on the line of the read, and in the absence of proof the presumption is, they did their duty; but we are not left to the presumption alone, for the evidence shows that after that time the bridges were regularly inspected,and were rebuilt, or partially rebuilt, under the direction and supervision of the proper officers of the company. We think, in the admission, of this evidence, and in the refusal of the court to rule it out, there was error to the prejudice of the defendant below.
Coming to the charge of the court, and remembering that the charge of negligence in the petition is that the defendant knew, or might, with reasonable diligence, have known that the bridge was deficient in its structure and maintenance, and was unsafe, what was the duty of the company in regard to its construction and maintenance? The court charged that the care required of the defendant company was that of ordinary care, which, we hold, is the true rule; and I may say, taking the charge as a whole, it exhibits, as a rule, extraordinary carefulness, and shows that the court has carefully considered and guarded most of the propositions. We find no fault with the charge, and have no criticism to make, except in one particular; and first, what is the law, and against what character and kind of flood must the company guard?
The case of the Pittsburgh, Fort Wayne and Chicago Railway Company and The Pennsylvania Railroad Company v. Loomis Brigham, 29 Ohio St.,374, was a case involving the liability of the railway company to a person whe bad gone to the station for the purpose of becoming a passenger, for an injury arising from what was claimed to be a defect in the construction of the railroad station into which.passengers were invited to come and wait until they should go on board the train. The syllabus reads:
“A railroad company is not liable for injuries occasioned by its buildings or structures being blown down by storms, where it has used that care and skill in their structure and maintenance which men of ordinary prudence and skill usually empley; and it is error in such cases to charge the jury that the company is bound to guard against all storms which can reasonably be anticipated.”
The opinion is short, and I may be pardoned for reading it in this connection:
Welch, C. J: “In the first paragraph of the court’s instruction we think the law of .the case is correctly stated. If *718 the defendants, in the construction and maintenance of the building, used that degree of care which men of ordinary-prudence are accustomed to employ in like business, they are not liable. Had the court stopped with this proposition, there clearly would have been no error in the charge; but the court went further, and told the jury that the defendants were bound to provide against all storms which could reasonably have been anticipated, and by plain implication told them that the defendants were bound to provide against all storms that were not unprecedented, or that were of a kind that had ever happened within the range of human experience. Taken by itself, this latter part of the charge is clearly erroneous and in conflict with the rule as first, and, as we think, correctly laid down by the court. The whole charge, taken together, to say the least, was calculated to mislead the jury. Two rules, apparently in conflict with each other, were laid down for their guidance, and it is impossible to know which they followed. The general custom of prudent persons in such cases, and not the absolute requirements of the occasion, is the true standard by which the defendants should be tried. They were only bound to come up to the fair average of careful and prudent men.”
On page twenty-one of the charge, page 664 of the record, after stating that the defendant’s claim, is that the accident was not occasioned by the negligence of the defendant, its servants or agents, the court charges as follows:
“But the defendant claims that the real cause of the wreck and the injury 'tc the plaintiff, was by a sudden and extraordinary rise of water, of which the defendant, its servants and agents had no notice and which they could not have reasonably anticipated. That the bridge was constructed and maintained in such a way and in such a manner, that the wreck would not have occurred, and that the plaintiff would not have been injured, had it not been for such an extraordinary flood and rise of the water in Coon Creek that the defendant, in the exercise of ordinary care and caution, could not and did not anticipate that it would ever occur.
“As a matter of law, we say to you, that, a railroad company is bound to bring to the construction of its ways and works, the knowledge and skill of engineering generally known and applied in such business, and to provide against such casualties as a cautious, prudent man possessing the same knowledge and skill, would or should foresee or anticipate, and in the location and erection of its bridges and trestles regard should be had to the size and nature of the stream; the character and features of the adjacent country; *719 the relative position and formation of the abutting land: its liability to overflow, with the probable extent and effect thereof. They should be so constructed as not to be subject to the risks and perils arising from rainfall, known by experience to be incident to that section of country, though rarely occurring, or which competent,skilled engineers should reasonably anticipate.
L. S. Sherman and Theodore Hall, for Plaintiff in Error.
Northioay & Williams, for Defendant in Error.
“But the company is not bound to provide against unusual floods, such as have been never known to occur, and which could not have reasonably been foreseen by competence and skill.”
We think the correct rule is that if the defendant, its agents and servants, in the construction, repair and maintenance of the bridge used that degree of care which men of ordinary prudence are accustomed to employ in like business, the company is not liable.
And in saying to the jury: “ The company is not bound to provide against unusual or extraordinary floods such as have never been known to occur, and which cannot have reasonably been foreseen by competence and skill,” the learned judge below placed the degree of care required of the company too high.
The jury would understand, the only sort of flood or rise of water the company was not bound to provide against is an unprecedented one, “such as have never been known to occur, ” and that against all others the company is bound to provide: That if such a storm was ever known, however rarely occurring, the company would be liable.
Therefore, for permitting the plaintiff to prove, and refusing to rule out the statement made by Frank Moore to Thomas Clark, the section foreman, and in allowing the plaintiff below to prove, and in the refusal to rule out the evidence that the bridge over the highway was not washed out, or disturbed by the flood, and in what the court said in regard to the kind of a flood the companv was not bound to anticipate or guard against, this case is reversed and remanded to the court of common pleas for a new trial.