## DAVID NUGENT v. ARMOUR PACKING COMPANY, Appellant.

### Division One, December 24, 1907.

1. **NECESSARY PARTIES: Share in Profits: Partnership.** Where plaintiff, the lessee of a quarry, obtained a contract with defendant to furnish certain stone, and sues for the value of stones of a larger dimension than those mentioned in the contract, another person who assisted plaintiff in hauling the stone, under an agreement, made after the contract was obtained, that he was to have one-half of the net profits or would be compensated in whatever way was right, was not a partner of plaintiff, and was not a necessary party to the suit.

2. ————: ————: ————: **Instruction: Non-Direction.** And an instruction for plaintiff which tells the jury that if they find those facts to exist, they should find that such third person was not a necessary party, is not erroneous. And if defendant desired a fuller direction on the subject of partnership, it should have asked instructions setting forth its theory; and having failed to do that it cannot complain of non-direction.

3. ————: ————: ————: ————: **Affidavit in Support of Motion for New Trial.** And an affidavit by said third person, filed in support of defendant's motion for a new trial, in which

he says he informed defendant that he was plaintiff's partner, is of no moment in passing on the propriety of the instruction, but goes alone to the court's discretion in refusing to grant a new trial.

4. **GOODS BOUGHT AND USED: Not Ordered.** Defendant is liable for stone delivered by plaintiff to defendant and used by it in its building, whether ordered by its contractor or not.

5. **PAYMENT: On Account: Acceptance Under Contract: Bar.** Acceptance of payment for stone at a contract price is not payment in full for larger and more valuable stone sold outside of the contract, but is at most simply a payment on account. And if the agent of plaintiff who received the payment was told by the defendant that the stone was sold under contract at a stipulated price, and plaintiff as soon as he was advised of defendant's contention informed defendant that the stone was not sold under the contract and that he did not intend to accept the price called for by it, he is not barred from recovering the value of the stone actually delivered and used by defendant.

6. **EVIDENCE: Unexpressed Intention.** The unexpressed intention of defendant in making a contract with plaintiff for "rubble stone" and "heavy rubble stone," at designated prices, and in subsequently writing a letter directing plaintiff to deliver "stone for footing, eight feet in length and four feet wide"—a different kind of stone from rubble—is not proper evidence, when defendant is sued for the value of this "heavy dimension stone."

7. **———: Prices Paid Others.** In a suit for the value of stone delivered, evidence of the price defendant paid others under contracts made with them for similar stone, is not competent.

8. **NEW TRIAL: Newly-Discovered Evidence.** The trial court exercises a sound discretion in passing on a motion for new trial based on newly-discovered evidence. Even where the evidence is in sharp conflict, the questions of diligence and whether or not the new evidence is cumulative, are still present.

## Transferred from Kansas City Court of Appeals.

AFFIRMED.

*Arthur F. Smith* and *Frank Hagerman* for appellant.

(1) The letter of March 14, 1900, was not an order for dimension stone. Unquestionably this letter

had to do with the contract. It was either an order for stone under the contract, or it was a modification of the contract, either as a matter of law, or as a matter of fact, by the understanding (or the mutual misunderstanding) of both the parties. It was not an order independent of the contract. The letter plainly shows that it had to do with some arrangement previously fixed upon between the parties, and without reference to the contract it would be unintelligible. Wagner v. Elec. Co., 177 Mo. 44; 15 Am. and Eng. Ency. Law (2 Ed.), 1092. (2) Whatever may be said as to whether defendant ordered dimension stone eight feet long by four feet wide, there is absolutely no evidence tending to show that defendant ever ordered any dimension stone five feet long by three feet wide. (3) Plaintiff did not, as a matter of fact, deliver any dimension stone. The evidence was so overwhelming on this proposition that the court should not have let the case go to the jury, and after the verdict for the plaintiff on the evidence offered, he should have set the same aside. (4) Starr was a necessary party to this suit; and whether he was a necessary party or not, he was so directly the representative of plaintiff that his admissions are binding on plaintiff. 1 Am. and Eng. Ency. Law (2 Ed.), 703; Railroad v. Fowler, 142 Mo. 670; Bank v. Bank, 90 Mo. App. 395. He was prima facie a partner. Torbert v. Jeffrey, 161 Mo. 654; Irby v. Brigham, 9 Humph. (28 Tenn.) 749; Hardy v. De Leon, 5 Tex. 243; Tuttle v. Turner, 28 Tex. 771. (5) 1. Plaintiff's first instruction is erroneous, because on plaintiff's own admission contained in his deposition he shows that he had given Starr a half interest in his business. This admission is conclusive against him. Feary v. Railroad, 162 Mo. 105. 2. The instruction is erroneous because it selects out and gives undue prominence to certain facts and ignores others. It accentuates plaintiff's statement that he only agreed to do the

right thing by Starr, and ignores what would be the effect of his having given Starr a half interest in his business. 3. The instruction also ignores an important line of evidence and an important legal principle. It attempts to cover the contingency as to whether Starr was a necessary party, but it ignores the effect of his admissions, if he was jointly interested in the contract, even though that interest was not sufficient to make him a necessary party plaintiff. Link v. Wes terman, 80 Mo. App. 596; May v. Crawford, 150 Mo. 528; Schlotzhauer v. Railroad, 89 Mo. App. 72. "Where a single instruction is given by the court which authorizes a verdict predicated on the facts therein stated to be found, it is bad if it omits other facts in evidence which would authorize a different result. It should embrace all the issues which there is any evidence to support." Bank v. Metcalf, 29 Mo. App. 395; Hoffman v. Parry, 23 Mo. App. 30; Seymour v. Seymour, 67 Mo. 308; Crews v. Lackland, 67 Mo. 621; Stocker v. Green, 94 Mo. 280; Chipley v. Leathe, 60 Mo. App. 15.

*Lathrop, Morrow, Fox & Moore* and *Cyrus Crane* for respondent.

(1) What the scope of the letter of March 14, 1900, was, and whether it constituted an order for dimension stone, was a question for the jury. The contract was for rubble stone only. The court was very liberal in permitting all sorts of testimony to be introduced to show what rubble stone meant. It even went so far as to permit the conversations between plaintiff and defendant's agent, prior to making the contract. Defendant introduced Webster's definition of rubble stone as follows: "Rough stone as it comes from the quarry; also a quarryman's term for the upper fragmentary and decomposed portion of the mass of stone." Now, every witness, on the stand who knew anything about the stone business, testified that stone gotten out to a size eight feet long by four feet wide, was not rub-

ble stone. The whole matter was a question for the jury. (2) Whether plaintiff considered, or should have considered, the letter as an order to begin the delivery of stone under the contract, was a question for the jury. It seems to us that there is not a proposition advanced by appellant, under this head, that is properly for consideration by this court. The arguments are all for a jury, and we do not consider that they are worthy of any discussion. (3) Was Emmett Starr a necessary party to this suit? (a) Starr had no contractual relation with defendant. The utmost that the testimony shows, or tends to show, is that he may have had a half interest in plaintiff's profits. This did not constitute him a partner with plaintiff, nor make him a necessary party to the action. Bank v. Outhwaite, 50 Mo. App. 124; Daniel v. Stone, 30 Me. 384; Deyerle v. Hunt, 50 Mo. App. 541; Hanson v. Jones, 20 Mo. App. 601; Thompson v. Holden, 117 Mo. 128. (b) Appellant also makes the claim that Starr made settlements with defendant, in full satisfaction for stone furnished to date of payment. This proposition is absolutely without support in the testimony. It is true that Starr did go down to the Armour Packing Company's plant, on two occasions, to collect money for stone which Nugent had furnished; but, on each occasion, payments were made by the Armour Packing Company simply on account—in other words, Starr was sent as a mere collecting agent, to get whatever money he could for Nugent. Lionberger v. Pohlman, 13 Mo. App. 123; Gibson v. Hanna, 12 Mo. 162; Grumley v. Webb, 44 Mo. 444; Aull v. Trust Co., 149 Mo. 1. (4) It was a matter for the discretion of the trial court as to whether a new trial should be granted on the ground of newly-discovered evidence. Tootle v. Lysaght, 65 Mo. App. 139; Culbertson v. Hill, 87 Mo. 553; Mayor of Liberty v. Barnes, 114 Mo. 426; Dean v. Chandler, 44 Mo. App. 338.

LAMM, J.—Nugent, a quarryman, sued defendant corporation for "1,000 perches of footing or heavy dimension stone" sold and delivered by him to it. The theory counted on was a *quantum valebat* — the reasonable worth put at $1.50 per perch. Deducting payments, recovery was sought for $935.05 with interest.

The answer follows:

"Defendant for amended answer to plaintiff's petition denies generally each and every allegation therein contained.

"Further answering defendant says there is a defect of parties plaintiff, in that Emmett V. Starr is a necessary party hereto."

Unfortunate below, defendant appealed to the Kansas City Court of Appeals from a judgment of $1,015. At its October term, 1903, aided by the oral argument and full briefs, the following opinion by SMITH, P. J., was handed down, concurred in by all his brethren of that learned bench:

"The plaintiff and defendant entered into a written contract by the express terms of which the plaintiff agreed to load upon the cars at his quarries 3,500 perches of rubble stone at fifty-five cents per perch of 2,240 pounds for heavy rubble, and fifty cents per perch of 2,240 pounds for common, as soon as requested by the defendant.

"About six weeks after the date the above contract was entered into, the defendant's purchasing agent, Mr. Jones, wrote the plaintiff to say that, in 'loading our stone for footing, that is of course the first stone to be used, we want to get stone of as large bearing face as possible. Our footing course is eight feet in width and we would like to have some of the stone as large as eight feet in length and four feet wide, if you can handle same. We want as many of them of this character as you can furnish for footings. In loading these cars to-morrow, please give your per-

sonal attention to this and see how well you can please us on the deal.'

"It is not disputed that the plaintiff furnished to the defendant 306 perches of rubble and one thousand perches of other stone which was received by defendant and used in the construction of one of its buildings.

"The plaintiff's contention in that the one thousand feet of stone was not 'rubble,' but was what was known among stone masons as 'footing or heavy dimension stone,' and that it was not the kind which he was required under his contract to furnish the defendant; or, stated in another way, it was furnished outside of and independent of the contract, and that therefore the price to be charged for it was not governed by that named in the contract for 'rubble stone.'

"The defendant's contention was, that all the stone received by it was furnished by plaintiff under the contract at the price therein specified.

"It must be conceded that, if all the stone furnished was of the kind called for by the contract, the defendant has paid the full contract price thereof, and is not, therefore, indebted to plaintiff. So, the main issue of fact in the case was as to whether or not the 1,000 perches of stone was all rubble or whether or not it was 'footing or heavy dimension stone;' and if the former the plaintiff ought not to have recovered, and if the latter he ought.

"Experienced quarriers and others were called as experts to testify their opinion as to whether or not 'footing or heavy dimension stone' are embraced in the definition of the term 'rubble stone;' or, in other words, whether these terms are all interchangeable. The plaintiff and his witnesses testified that 'rubble stone' meant any irregular sized stone that may be handled without machinery; and by 'footing or heavy

dimension' stone was understood to be stone taken out of a quarry of a given size.

"Plaintiff testified that, 'in taking out rubble stone, you can get in a bench of rock and stick a hole in it, a good big hole, say with a drill, a quarter of an inch bit, and put a charge of powder in it, and you can explode it and spill the rubble all around you, so you get at them and break them up at the same time so that you can handle them by hand and load them in a wagon by hand; and in getting out dimension stones, you have got to drill them, plug and feather drills, got to have more drills and got to handle them with derricks, and it costs four times as much to get out dimension stone as it does rubble.'

"The plaintiff further testified that in getting out the eight-by-four and five-by-three stone ordered by defendant, he went on the benches of the quarry, and with a rule laid them off, measured the lengths and widths, made a line, showed the men where to put the tools, plugs and feathers, etc. He further testified that all the stone furnished the defendant except 306 perches of rubble was dimension stone which he handled with a derrick.

"The defendant's witnesses testified that by the term 'rubble' was meant stone of irregular shapes and sizes just as they come out of the quarry—large stones being called 'heavy rubble' and small ones 'light rubble;' that rubble that could be lifted by hand was called light or common rubble and that which could not was called 'derrick rubble;' that 'derrick rubble' and 'heavy rubble' were the same thing; that any stone that was drilled out with 'plug and feather'—that which is so taken out to approximate a certain size in feet and inches—was called 'dimension stone.' The defendant's witnesses all testified that there was no dimension stone included in that furnished by plaintiff to defendant.

"The case was submitted to the jury whose verdict was for plaintiff.

"I. The questions arising on the record and which we are obliged to decide relate mainly to the action of the court in the giving and refusing of instructions. The defendant objects that the court erred in its action giving the plaintiff's first, which told the jury, 'that defendant pleads in its answer that one Emmett Starr is a necessary party to this action. With reference thereto, the court instructs you that if you find from the evidence that said Starr was not a party to the contract or contracts, if any, made between plaintiff and defendant, and that defendant did not order the stone in question from said Starr, and that the arrangement, if any, between plaintiff and said Starr was that plaintiff agreed either to do the right thing by said Starr in payment for services that said Starr might render plaintiff, or if plaintiff merely agreed to give said Starr some portion of the profits, if any, that he might receive from the defendant on stone furnished it, and this was the full extent of the agreement between plaintiff and said Starr, then you are instructed that Starr is not a necessary party to this action and plaintiff's right to recover cannot be defeated merely because said Starr is not joined in this action as one of the plaintiffs.'

"This was based on the evidence touching the relation that existed between plaintiff and Starr, and in our opinion was a correct expression of the law. [Hanson v. Jones, 20 Mo. App. 601; Bank v.Outhwaite, 50 Mo. App. 124; Deyerle v. Hunt, 50 Mo. App. 541; Thompson v. Holden, 117 Mo. 118.]

"It is clear from the reading of the deposition of the plaintiff that in using the expression 'half interest in the contract,' he meant half interest in the profits of the contract. He did not without qualification or explanation depose that he gave Starr a 'half interest'

in the contract; but, on the contrary, that he gave him a half interest in the profits of such contract.

"There is nothing in any evidence adduced which tended to prove that Starr in any way was to share in the losses sustained by plaintiff in furnishing the stone to defendant, or that he had any community of interest in plaintiff's property so that he could dispose of it, or that there was anything in their business relations that constituted a partnership.

"II.    The petition alleged that the plaintiff furnished the defendant 'footing or heavy dimension stone.'    The plaintiff's second instruction told the jury that if he delivered to defendant 'footing or heavy dimension stone,' and that such stone was not of the kind specified in the contract between plaintiff and defendant, but was of a greater market value, and that plaintiff did not furnish such stone under said contract and that the same had not been fully paid for, to find the issues for plaintiff.

"It is objected that this instruction is erroneous in that it authorizes a recovery if plaintiff furnished either footing or dimension stone.    As we understand the evidence, dimension stone is often used for footings and in that the terms become synonymous; but neither term is the synonym of rubble.

"The evidence, we think, was sufficient to authorize the instruction.

"III.    The defendant's objection that the plaintiff's third, which told the jury that if it found for plaintiff to allow him the reasonable market value of the stone so furnished, if any, not to exceed the amount sued for, was erroneous in expression cannot be sustained.

"It was distinctly testified by the plaintiff that the 306 perches of rubble furnished under the contract had been paid for.    The action was brought to recover for footing or heavy dimension stone and it

was the reasonable market value of that to which the instruction applied, and as to this could not have been misunderstood by either court or jury.

"IV.    It is further contended that the plaintiff's fourth, which declared, 'by admitting that the absent witnesses, Starr and Triplett, would, if present, testify as read to you from the application for a continuance, does not thereby admit that their testimony is true, but has the right to disprove the same by the testimony of other witnesses,' in the light of Freeman v. Railroad, 95 Mo. App. 94, was erroneous.    The instruction here is unlike that set out in the case just cited, as will be seen by a comparison of them.    The criticism of that instruction is inapplicable to this.

"V.    Of the twenty-two instructions requested by defendant the court gave ten, which, it seems to us, submitted every conceivable defense available to it Its complaint that the court erred in refusing its third cannot be upheld.    By it the court was requested to declare to the jury that, 'as to all stone furnished by plaintiff to defendant of sizes and shapes, one or both, in pursuance of the directions of witness Evans, they will find in favor of defendant.'

"The eight-by-four stone ordered by Mr. Jones's letter were larger than was required and so the contractor, Evans, ordered plaintiff to deliver them of the size of five-by-three.    It appears from the evidence that 900 of the 1,000 perches of footing or heavy dimension stone furnished were of the latter kind, so that the instruction would, if given, have in effect cut plaintiff out of a recovery for nine-tenths of the stone delivered by plaintiff and received and used by defendant in the construction of its building.    It did not follow because the testimony of Evans in respect to ordering the stone of the latter kind was excluded from the consideration of the jury that the plaintiff was not entitled to recover for the market value of such stone.

"There was other evidence, which was undisputed, that the plaintiff delivered the stone to defendant and that it used the same in the construction of its building, and whether ordered or not by Evans it was, under the well-settled rules of law, liable for the reasonable value of such stone.    [Mfg. Co. v. School Dist., 54 Mo. App. 371; Yeats v. Ballentine, 56 Mo. 530; Keith v. Ridge, 146 Mo. 90; Muller v. Gillick, 66 Mo. App. 500.]

"VI.    We find nothing in the evidence to justify the defendant's fifth and sixth, that, if Starr accepted payment for the stone delivered at fifty-five cents per perch, plaintiff could not recover, and that plaintiff was bound by the action of said Starr in making settlements with Jones in the same manner as though he had made such settlements himself.    There was no evidence introduced to authorize the conclusion that the partnership relation existed between plaintiff and Starr, and that Starr in receiving the payment for stone delivered was acting in that capacity and was authorized to accept fifty-five cents per perch.

"It appears that Starr at the time he made the last collection had never heard that there was any contract price for the stone delivered, because he stated that, when Jones asserted that the stone had been delivered under a contract for a stipulated price, 'if that was so he did not see how more could be expected.'

"As soon as plaintiff was advised of the contention of Jones he at once went to see him and then told him that the stone which he had ordered had not been delivered under the contract, and that he did not intend to accept the price called for by it.

"Previous to the time when the fourth and last payment was made to Starr there had been no intimation by Jones or anyone else for defendant that the price of all the stone delivered should be governed by that specified in the rubble contract.    All the evi-

dence tended to show no more than that the several payments were made on account.    So far as we are able to discover, there is nothing in the evidence tending to show that Starr in any capacity undertook to or did accept fifty-five cents per perch in full payment for all the stone delivered.

"VII.    The court was requested by defendant's seventh, to tell the jury that if the defendant by the letter of March 14, 1900, ordered plaintiff to furnish stone under the contract, and that in pursuance thereof he furnished that sued for, there could be no recovery.    And by its eighth it was further requested to tell the jury that defendant by its letter of March 14, 1900, ordered stone under the written contract, and to so find.

"The former of the last two instructions is but little more than a repetition of the defendant's eleventh and fourteenth which were given by the court. The issue sought to be submitted by such former instruction was fully covered by the said eleventh and fourteenth, and also by the plaintiff's second.

"As the defendant requested and was given instructions submitting the issue to the jury, it is in no situation to complain of the action of the court in refusing its eighth.

"VIII.    An examination of the evidence has not satisfied us that the court made the erroneous rulings as claimed by defendant in respect to the admission or rejection of evidence.    The court was extremely liberal in permitting the defendant's witness, Mr. Jones, to testify as to the conversations between him, witness, and plaintiff which took place before the contract was entered into as to what they understood by 'rubble stone.'    Not only this, but the court permitted Mr. Jones to further testify that the plaintiff knew the purpose for which the stone was ordered and that it was going into the foundation of the building then

about to be erected by defendant.    It is true it refused to permit the defendant to show its unexpressed intentions in making the contract and writing the letter, but this refusal was, we think, a proper ruling. [County v. Wood, 84 Mo. 489; Miller v. Power Co., 133 Mo. 205.]    Nor do we perceive any error in the action of the court in rejecting the defendant's offer to prove the price it paid others under contracts made with them for similar stone, because this did not tend to prove the market price at the place of delivery. [Cobb v. Whitsett, 51 Mo. App. 146.]

"IX.    Finally, the defendant insists that the court erred in its action overruling the motion for a new trial.    While the newly-discovered evidence is contradictory of that of the plaintiff's witnesses, it is more or less cumulative of that previously adduced by it at the trial.

"We see nothing in the affidavits that would justify us in condemning the action of the court in refusing to grant the defendant a new trial on the ground of newly-discovered evidence.    The testimony of the witnesses given at the trial greatly conflicted, but the whole case was fairly submitted to the jury, resulting in a verdict for plaintiff which we must regard as conclusive on us.

"The judgment will accordingly be affirmed.    All concur."

It seems the decision was criticised with fervor and uncommon keenness in a motion for a rehearing, fortified by a formidable brief; but the motion was in turn denied.    Thereat counsel filed a motion to transfer the cause to this court, and that motion was sustained.    Defendant's counsel may be allowed to state the ground upon which the transfer was made in their own words, viz.:    "The case . . . was by that court certified to this court for the reason that in the

opinion of one of the judges the case was in conflict with the case of Torbert v. Jeffrey, 161 Mo. 645.''

It will do to say in passing that the litigation has been pending nearly as long as Solomon was building his temple at Jerusalem. That the case was tried, *nisi*, before an able judge (Teasdale) whose untimely death put out a bright light in jurisprudence. That at every stage and on both sides case and court were aided by alert counsel, adept in legal thrust and parry (every allowable *carte* and *tierce*) and soundly grounded in the law.

At one stage it was contended that a constitutional point was involved, to-wit, the statute permitting nine jurymen to render a verdict, and that our jurisdiction might hinge on that statute; but that question has so long been closed it is deemed obsolete and laid away on the shelf with other curios and ''points, nopoints'' in the law. Counsel do not press it now.

We shall adopt the opinion of Judge SMITH as our own, submitting, however, to further consideration the error assigned in giving instruction numbered 1 for plaintiff, in which instruction there is said to be laid away the live question of our jurisdiction.

Counsel argue that said instruction, which gave to the jury the rule by which to allow or disallow a partnership between Nugent and Starr, did not lay down the right standard to measure the existence or non-existence of a partnership. They argue that, in sustaining that instruction, the opinion is in conflict with Torbert v. Jeffrey, *supra.*

Facts going to a partnership between Nugent and Starr and the latter's connection with the case not appearing in the petition, the issue was properly raised by the answer. If that partnership existed the title to the pay for the stone in suit was in the partnership of Nugent and Starr and not in Nugent alone. Defendant was vitally interested in foreclosing the possibil-

ity of another suit and further liability; and, hence, its challenge to the right of recovery was well made by answer.

Attending to the only evidence directed to the issue of partnership, we copy from defendant's brief in this court, viz.: "The only evidence on this proposition was the evidence of the plaintiff on the trial, his admissions contained in his deposition read on the trial and the evidence of Emmett V. Starr in defendant's affidavit for a continuance. This evidence was as follows:

"NUGENT:     (Oral evidence.)

"Q. Now then, Mr. Nugent, just getting back to the matter I asked you about. State what Starr's relation to you was at the quarry and in that business? A. Why, I told Mr. Starr when Mr. Kinlon refused to help me with the quarry—he got a big sewer contract here—I says: 'Mr. Starr, I saw Mr. Kinlon and told him I would have to have somebody to tend these cars'—there were hardly any of them loaded when I got down there—

"Q. Go ahead. A. I told him there weren't any of them loaded down there and somebody would have to look after it, and Mr. Kinlon had the lease on this quarry, and was going partnership with me; I told him it was time to show up and help me out on this deal; so he told me all right. 'Very well,' he says, 'why don't you get Starr to help you out; he has got some teams and he can do that outside business for you, and you can do what is right with him;' so I told him, 'all right.' I says [to Starr, as we see it] maybe you better go to work and let somebody else drive your team, and I says, tend to seeing these cars loaded and weighed, and see that they don't get overloaded out there on the track, and leave your teams up there, I says, and I will do the right thing with you, and maybe give you an interest in that quarry, and if I don't give you an

interest in it I'll do the right thing by you anyway; so he said, 'All right;' he went and consulted his father; his father told him he could—

"Mr. SMITH: Wait a minute.

"Q. Never mind what his father said. And then he went to work there? A. Yes, sir.

"Q. Now, when you got through with this thing, or when you stopped there, did you have any sort of settlement with him? A. Not a thing, only I just turned him over my tools; he got a job of rip-rapping and I turned over my tools and he has got them yet until I do settle with him.

"Q. He has got them until you compensate him? A. Yes.

"Q: And that was all there was to it, till you do the fair thing, whatever that is? A. Yes, sir.

"Q. What is agreed to, and he holds your tools as security for that? A. Well, he holds the tools anyway, I suppose, for security for it.

"NUGENT: (Deposition.)

"Q. Did you handle this contract alone or did you have someone else with you on it? A. I took the contract alone, but the latter part I took a man in with me by the name of Starr. I told him I would give him a half interest in it and he was to furnish the teams and look after it.

"STARR: (Affidavit for continuance.)

"After the making of said contract I made an agreement with Mr. Nugent by which I acquired a half interest in his contract. I was to do the hauling and delivering of the stone and was to get one-half of the profits. This agreement with Nugent is still in full force and effect."

On the foregoing evidence, plaintiff's instruction numbered 1 must stand or fall. It reads:

"You are instructed that defendant pleads in its answer that one Emmett Starr is a necessary party to

this action.    With reference thereto, the court in-
structs you that if you find from the evidence that said
Starr was not a party to the contract or contracts, if
any, made between plaintiff and defendant, and that
defendant did not order the stone in question from said
Starr, and that the arrangement, if any, between plain-
tiff and said Starr was that plaintiff agreed either to
do the right thing by said Starr in payment for ser-
vices that said Starr might render plaintiff,  or  if
plaintiff merely agreed to give said Starr some por-
tion of the profits, if any, that he might receive from
the defendant on stone furnished it, and this was the
full extent of the arrangement between plaintiff and
said Starr, then you are instructed that Starr is not
a necessary party to this action and plaintiff's right
to recover cannot be defeated merely  because  said
Starr is not joined in this action as one of the plain-
tiffs.''

Was the instruction good?    We think so, because:

It is not only in line with the authorities cited by
SMITH, P. J., but is in line with Torbett v. Jeffrey,
*supra*.    In that case, BRACE, P. J., said:

"In determining whether the relation between the
parties constitutes a partnership, *their intention gov-
erns as that is disclosed, not by particular expressions,
but by the nature and effect of the whole contract.* . .
.  .  .  .

" 'Participation in the profits and losses of a go-
ing business or undertaking affords the usual, and, per-
haps, the most cogent test of the existence of an inten-
tion to form a partnership.    *An agreement for such
participation is not, however, a conclusive test, and
does not absolutely constitute a partnership as a con-
clusion of law, if other circumstances show that no
partnership was intended. It is only prima-facie proof
which may be rebutted by evidence of other facts and.*

. 208 Sup—32

*circumstances.'*   [17 Am. & Eng. Ency. Law (1 Ed.),
835a; Donnell v. Harshe, 67 Mo. 170; Musser v. Brink,
68 Mo. 242; McDonald v. Matney, 82 Mo. 358; Kellogg
Newspaper Co. v. Farrell, 88 Mo. 594; Clifton v. How-
ard, 89 Mo. 192; Thompson v. Holden, 117 Mo. 118; 1
Bates on Partnership, secs. 25 and 29.]

"And as a community in losses is a necessary cor-
ollary of a participation in the profits, a partnership
may as well be predicated of an agreement to share
*net* profits, as of an agreement to share the profits and
losses, and the same rule applies.    Hence, 'participa-
tion in the profits of a business raises a presumption of
the existence of a partnership.    This presumption is
not conclusive, but if not rebutted is sufficient to es-
tablish a partnership.'    [17 Am. & Eng. Ency. Law
(1 Ed.), 841b; Lengle v. Smith, 48 Mo. 276; Philips
v. Samuel, 76 Mo. 657; Fourth Natl. Bank v. Althei-
mer, 90 Mo. 191; 1 Bates on Partnership, sec. 30; Co-
rey v. Cadwell, 86 Mich. 570.]

"When both parties furnish the capital and are to
share in the profits, ordinarily no question can arise as
to the existence of a partnership.    When one party
contributes to the capital and the other the labor, skill
or experience for carrying on a joint enterprise, such
a combination constitutes a partnership unless some-
thing appears to indicate the absence of a joint owner-
ship of the business and profits.    [17 Am. & Eng.
Ency. Law (1 Ed.), 842-3.]    *Such absence of joint
ownership is indicated when from the whole contract
it appears that the party contributing his services is
to receive a share of the profits merely as compensa-
tion for his services, as illustrated in some of the cases
cited.*    But it does not appear, from the fact that one
part of the business is to be conducted by one of the
parties and the other part by the other party, nor by
the fact that the capital is to be returned to the partner

putting it in before the profits are shared.   These are but the ordinary incidents of a partnership.''

In Thompson v. Holden *et al.* (Warren, appellant), 117 Mo. l. c. 128, it was said: ''The rights of the parties must be deduced from their intention, as shown by the agreement read in the light of surrounding circumstances.   It is well settled that the mere participation, by one, in the proceeds of a transaction or business does not *per se* constitute him a partner therein.   [McDonald v. Matney, 82 Mo. 358; Kellogg Newspaper Co. v. Farrell, 88 Mo. 597; Gill v. Ferris, 82 Mo. 156; Ellsworth v. Pomeroy, 26 Ind. 158; Blair v. Shaeffer, 33 Fed. 218.]''

Persons may so act with, and hold themselves out to, strangers that they may be estopped to deny a partnership, though their intentions may not have been to make one.   But there is no question of estoppel here. Here the question of partnership must be  referred alone to the agreement between Nugent and Starr, as read in the light of their intentions and conduct.   Giving heed to some other facts disclosed by the record in this connection, it appears that the agreement between Starr and Nugent was not made until some time after plaintiff and defendant contracted.   It appears that Nugent held the lease on the quarry and that Starr had no interest in that; that Nugent owned the quarry tools and appurtenances and Starr had no interest in them.   It appears that the running arrangement between Nugent and Starr for adjusting their liability *inter sese* was that Starr took Nugent's tools as collateral security and looked to Nugent for his pay.   It is shown, too, that Starr acted on behalf of Nugent in collecting installments of pay for the stone ''on account.'' So far as the defendant's evidence discloses, it does not appear that Starr informed defendant of the by-arrangement between him and Nugent.   It is true that in an affidavit in support of the motion for a new trial,

*nisi,* Starr says he informed defendant that he was Nugent's partner; but the facts in that affidavit go alone to the discretion the court exercised in refusing to grant a new trial and do not rise to the plane of substantive evidence or touch the merits of the case on appeal.

The instruction assailed was not a general instruction covering the whole case and requiring the jury to find for plaintiff on the hypothesis put therein; it was directed to only one phase of it, and was clearly based on plaintiff's evidence and well within the bounds of the law.    If, now, defendant desired more instructions on the issue of partnership or no partnership, it should have applied to the court for further instructions, based on its own theories.    This it failed to do and may not complain of *non-direction.*    We find no fault with the instruction.    It told the jury that if they found the ultimate facts put to them (and which there was evidence to support) to be true then there was no partnership and Starr was not a necessary party, and we think so ourselves.

Counsel for defendant in a new brief in this court elaborately cover the whole range of the case on every point urged, *nisi,* and in the Kansas City Court of Appeals.    They argue, for instance, there was error in refusing to grant a new trial on newly-discovered evidence.    But that question went to the sound discretion of the trial court, was wrapped up with matters of diligence, and with the question whether the newly-discovered evidence was merely cumulative, and was well disposed of.

Finally, a faithful examination of the whole record but confirms what might have been forecasted as reasonable, to-wit, that the opinion of SMITH, P. J., laconically, compactly but justly outlines the case, states the contentions pro and con, and properly disposes of all assignments of error demanding judicial

determination.    Finding no fault with it on any score, it is approved by and large.

The foregoing. being so, the judgment of the circuit court should·be affirmed.    Let it be so ordered.

All concur.