MICHAEL B. AARON, Respondent, v. METRO-POLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 28, 1911.

1. **DAMAGES: Conflict of Evidence.** Plaintiff, a passenger on one of defendant's cars, was injured in jumping from the car in antici-pation of its colliding with another car. He recovered a verdict for $12,500 of which he voluntarily remitted $5000. Although there was substantial evidence that plaintiff had received severe injuries, a judgment for $7500 is held to be excessive, and a re-mittitur of $2500 is ordered.

2. **TRIAL PRACTICE: Motion for New Trial: Newly Discovered Evidence: Lack of Diligence in Discovering Same: Deposition of Adversary: Right to Take.** Defendant asked for a new trial setting up, amongst other grounds, evidence tending to contradict the evidence of plaintiff as to his former good health. The over-ruling of this motion on this ground was a matter of discretion with the trial court, and this discretion was not abused in this case where defendant did not make a timely application for a physical examination, and did not avail itself of its right to take plaintiff's deposition and compel the disclosure by him of the particulars of his previous health and condition and the names of the physicians who treated him.

3. **TRIAL PRACTICE: New Trial: Jury Reading Comment on Case in Newspaper.** It is not ground for a new trial that the jury read an article in the newspaper commenting on the case and telling the result of other claims growing out of the same catastrophe.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover*, Judge.

AFFIRMED CONDITIONALLY.

*John H. Lucas* and *Ben F. White* for appellant.

The court erred in overruling defendant's motion for new trial: (a) Defendant was entitled to a new trial on the ground of newly discovered evidence. Proper diligence was shown; the evidence had been

kept concealed as thoroughly as possible by plaintiff, and, owing to the nature of the disease and its treatment, it was very difficult to get at. Its nature was such as that it ought to very materially affect the verdict of a jury. State v. Murray, 91 Mo. 103; State v. Baily, 94 Mo. 315; Folding Bed Co. v. Railroad, 148 Mo. 478. (b) There ought to have been a new trial granted because the verdict returned by the jury shows the jury to have been biased and prejudiced against the defendant. Burdict v. Railroad, 123 Mo. 236; Nicholds v. Plate Glass Co., 126 Mo. 68; Radney v. Railroad, 127 Mo. 676; Hellenbeck v. Railroad, 141 Mo. 112; Chitty v. Railroad, 166 Mo. 443; Stolze v. Transit Co., 188 Mo. 581; Reynolds v. Transit Co., 189 Mo. 408; Gurley v. Railroad, 104 Mo. 211; Haynes v. Town of Trenton, 108 Mo. 134; Whalen v. Railroad, 60 Mo. 323; Adams v. Railroad, 100 Mo. 555.

*M. J. Oldham* and *Boyle & Howell* for respondent.

(1) The reading by the jury of an article in a newspaper commenting on the case was not ground for a new trial. Copeland v. Railroad, 175 Mo. 650; Sherwood v. Railroad, 88 Mich. 108; Fuller v. Fletcher, 44 Fed. 34, 12 Enc. Pl. and Pr. 622; Kerr v. Lunsford, 31 West Va. 659. (2) The verdict is subject to the judicial discretion of the trial judge, and that discretion exercised upon the verdict, will not be interfered with upon appeal except it be unmistakably exercised unwisely. McCarty v. Transit Co., 192 Mo. 396; Devoy v. Transit Co., 192 Mo. 197; State v. McKenzie, 177 Mo. 716; King v. Gillson, 206 Mo. 279; Berry v. State, 10 Ga. 511; Winn v. Grier, 217 Mo. 461; Boggs v. Lynch, 22 Mo. 566; Caldwell v. Dickson, 29 Mo. 229; Stephens v. Macon, 83 Mo. 345; Cook v. Railroad, 56 Mo. 380; State v. Smith, 65 Mo. 313; Brolaski v. Putnam, 34 Mo. 459; State v. Parker, 106 Mo. 217; Collins v. Glass, 46 Mo. 297.

BROADDUS, P. J.—The plaintiff's suit is to recover damages for an injury sustained as the result of defendant's negligence.

The plaintiff is a lawyer, thirty-six years of age and a member of the Kansas City bar. On the 19th day of October, 1908, he was a passenger on defendant's car operated on what is known as its Troost line. When the car arrived at a point between Ninth and Tenth street on its way north, the motorman lost control of it, and it ran back past Tenth and Twelfth streets on a downward grade with unusual velocity. As the car approached Thirteenth street the indications were that it would collide with another car on the track, and the plaintiff to avoid injury jumped off and received the injury complained of.

The producing cause for the action of the car in getting beyond the control of the motorman was an accumulation of autumn leaves on the defendant's tracks. It was sufficiently shown that plaintiff was justified in jumping when he did, as the cars actually collided and ran on down the grade for a short distance and collided with other cars on the track. As the principal complaint of the appellant is that plaintiff's injuries were largely exaggerated it becomes necessary to examine the evidence with some particularity.

One of the first witnesses called was Dr. Halley, a noted surgeon of Kansas City, who testified that when he first saw plaintiff for the purpose of treating him plaintiff did not tell him of the injury he had received in jumping from the car, but "just complained terribly of the pain in his leg," and that it was not until after he had treated him for three or four days for uric acid and rheumatism, and from which he got no better that plaintiff informed him of the fact that he had jumped from the car as stated. As soon as he received a detail of the injury from the plaintiff the doctor stated he "became cognizant of

the fact that the disease or the trouble was due to traumatism of the anterior crural nerve" or an injury to the outside nerve of the leg and thigh. He stated that his treatment of plaintiff had been continuous ever since; that upon examination of plaintiff he found "a tenderness along the whole course of the nerve—a tenderness or pressure;" that he was sleepless and had great pain all the time; that during his treatment plaintiff went to Chicago to see his father and then went to Hot Springs to see if that would do him good. The doctor was asked what effect it would have upon plaintiff if he undertook to do business. A. "Well, it would aggravate the conditions. He was sleepless, and in fact couldn't attend to business—that was all there was to it." He testified that he had known plaintiff before the accident, and that after the injury there was a change in his appearance; and that his face had the expression of suffering; that he was much thinner; and that prior to the injury he "was one of the most energetic men that he knew." On cross-examination he stated that plaintiff did not tell him of the injury until after he had asked him if he had had one. He also stated on cross-examination that he had heard that the Chicago doctors treated him by trying to make a hypodermic injection into the sciatic nerve; and that they applied electric light of high power and gave him heat along the line of the nerve; and that when he treated him he discovered no marks of injuries upon him.

Dr. Conner testified, that he was an osteopath physician and examined plaintiff November the 7th and 8th, 1908, and found a twisting of the pelvis and slipping of one of the innominate bones; that one of the big bones on the side was pinching the nerves and causing plaintiff a great deal of pain; that he was unable to relieve him of his condition because he was not a surgeon and that he recommended him to get

a surgeon and have the bone put back in its place; and that he was unable to walk on account of pain.

Dr. Annie Peters, another osteopath doctor, saw him soon after he jumped from the car and found according to her diagnosis that he had suffered an injury "to the sacral iliac articulation making the joint of the hip—the articulation of the iliac bone of the spine" or "in common parlance, stove up."

Dr. Forster testified that plaintiff was suffering "from what is termed traumatic neurasthenia" which he defined as, "a severe nervous depression, lack of normal function, owing to injury to the spine or nerves, and low vitality."

Dr. Burnett, a noted specialist on mental and nervous diseases, testified that he examined plaintiff and that he "found outside of his general nervous disturbance and his exhaustion and weakness, a trouble in his left hip, where it connects onto the lower end of the spinal column, at the level of what we call the sacrum, that is, the large bone that the spinal column rests on, the last joint of the spinal column resting upon this so-called sacral bone, which is between the two hip bones. That is, that something had occurred to him that would seem to be traumatic in character." He further testified that some of the muscles of his leg were paralyzed, shrunken, and had become flat and dropped down; and that the chances for his recovery were not good.

Dr. Frank Wright testified and in a general way corroborated the evidence of the other doctors. Plaintiff himself, as well as others, testified as to his good health before he received the injury. Among other matters, plaintiff stated that since his injury he was subject to fainting spells.

The defendant introduced evidence tending to show that the cause of the car getting beyond the control of the motorman was the accumulation of leaves on the track, and that its motorman did all

he could under the circumstances to avoid injury to its passengers. Defendant also introduced evidence tending to show that plaintiff had been sick before he received his injury. Miss Elwell testified that she had worked for him at one time and that he was very sick on one occasion while in his office and had to be carried home; that she had seen him frequently since but had not noticed that he looked so badly as he had for the last few days before the trial.

Mr. Lowrance, another lawyer, testified that he saw plaintiff when he was very sick; that he was brought into witness's office where he remained all day and was then taken home. This was the same occasion referred to by the former witness, Miss Elwell; that he had seen him occasionally since his injury and did not notice any difference in his appearance. Other witnesses testified that they had not noticed any difference in plaintiff's appearance since his injury and the time prior thereto.

The jury returned a verdict for plaintiff in the sum of $12,500. The defendant moved for a new trial. Among the grounds therefore was the following: "Because of newly discovered evidence that plaintiff was, before and after the time when he alleges he was injured on October 19, 1908, suffering from an incurable disease which caused him to have the fainting spells and nervous prostration testified to by him as the result of injuries he alleged he received on said occasion; that the newly discovered evidence will show that plaintiff's health was not, as he claimed, perfect, prior to said October 19, 1908, but that his health was poor; that he required the services of physicians; that on the 5th day of December, 1907, he had Dr. Roger B. Brewster, a physician, . . . treat him, not for his stomach or for stomach trouble, but that to revive plaintiff, he had to give him a hypodermic to stimulate his heart; that on said December 5, 1907, he was treated at his home

by Dr. I. J. Wolf, . . . and also upon the 6th, 7th, 8th and 9th days of said December, . . . etc. The defendant's proceeds further to state that the evidence "is material as showing the condition of plaintiff's health and affects the amount of damages that plaintiff would be entitled to recover under the allegations of his petition; that defendant did not know of the existence of said evidence until after the close of the trial in this case, and had no means of knowing of the same," etc.

Another ground alleged was: Because the jury while the case was being tried before them read a certain article published in a newspaper, the Kansas City *Star*, which was as follows:

"AUTUMN LEAF SUIT TO TRIAL.
Michael B. Aaron asks $20,000 Damages of
the Metropolitan.

"The suit of Michael B. Aaron against the Metropolitan Street Railway Company for $20,000 damages went to trial in the circuit court this morning. This case is one of several known as the 'autumn leaves suits' and is the last of litigation arising from an accident October 19, 1908. The trolley of a north bound car on Troost avenue left the wires that day near Tenth street. The car ran back as far as Twelfth street. A collision with a Twelfth street car followed and several persons were injured.

"In four suits already tried in which verdicts were returned for the plaintiffs, the Street Railway Company contended that the autumn leaves, which the city had allowed to gather on the track, were responsible for the motorman's inability to check the speed of his car and thereby prevent a wreck. The collision resulted in one fatality, that of William Smith, whose estate compromised with the company for $3500."

It is alleged "that said article was calculated to and did prejudice the minds of the jurors against de-

fendant and caused them to believe that four juries in similar cases growing out of the same accident upon which the case being tried by them was founded, had all returned verdicts against this defendant and that it was their duty to return a verdict against defendant.''

Defendant filed the affidavit of Dr. Brewster which supported the allegation of the motion in so far as it referred to the treatment of the plaintiff. Also that of Hugo Eyssell, a druggist, who produced a number of prescriptions made out for plaintiff prior to the date of his injury, some of which contained mercury and other drugs, but it was not shown what the medicine was given for.

The evidence of Dr. Wolf was also introduced. He wrote the prescriptions mentioned but declined to state for what disease they were given. He, however, did state that he was not in perfect health, otherwise he would not have treated him. He was asked if the prescribed medicines were given for syphilis. The witness declined to answer.

C. F. Taylor, who assisted in the case, testified that in the preparation of the case he saw plaintiff who told him that he had been treated by Dr. Halley and that Dr. Wright and Dr. Goodkind of Chicago had treated him; and that two osteopaths had treated him but declined to give the names, saying that he did not remember their names; that plaintiff informed him that before his injury he was a strong, healthy man, and had no sickness before that time.

Mr. Oldham, for plaintiff, testified that he went to defendant's attorney before the trial and offered to submit plaintiff to an examination and told him the names of all the doctors that had treated him. Afterwards defendant filed a motion asking for a physical examination of plaintiff which was overruled by the court. Before defendant's said motions were heard plaintiff entered a remittitur of $5000, and the

Aaron v. Street Railway Co.

motions for a new trial and in arrest of judgment were overruled. Defendant appealed from the judgment.

The evidence greatly preponderates in plaintiff's favor to the effect that he was not only injured, but that he was severely injured and suffered great pain. It would be going against a vast amount of the testimony of the most reputable witnesses to say otherwise, but that his injuries were as severe as he contends they were is contradicted by the defendant; and the assertion is made by appellant that much of his complaint was due to his poor health caused by the infliction of an incurable disease contracted prior to the date of said injury.

Notwithstanding plaintiff's testimony that his prior health was perfect, there was much evidence to the contrary and at one time especially he was a very sick man.

The newly discovered evidence is upon the same line as is what we call cumulative evidence. It is not the practice of the courts to grant a new trial in such cases, especially when it appears that the party complaining has not exercised the necessary diligence to obtain such evidence in the first instance. Unfortunately the defendant has been lax in that respect. It had every opportunity to gain full information as to all the matters set up in its application. It could have taken plaintiff's deposition and compelled him to disclose all the particulars as to his previous health and his condition arising not only from the injury, but attributable to former disease; and to have named all the physicians who had treated him. For failure to use the means within its power it has not placed itself in a position to claim the indulgence of the court in the exercise of its discretionary power in granting new trials. [Devoy v. Transit Co., 192 Mo. 197.] Besides, defendant had the opportunity according to the affidavit of Mr. Oldham, the plain-

tiff's attorney, which stands uncontradicted, of having the plaintiff examined before the trial, but it failed to avail itself of the privilege and the action of the court in refusing the request for the examination made after the trial was proper.

There are many objections to the motion which were sufficient grounds for the action of the court in overruling it, but we prefer to base our holding on the want of diligence, and on the further ground, that the granting of an application for a new trial is largely a matter of discretion vested in the trial courts, and appellate courts will not interfere with their actions in granting or refusing a new trial unless it appears manifestly that such discretion has been abused. [Stephens v. Macon, 83 Mo. 345; Blake v. Ins. Co., 133 Mo. App. 16; Nugent v. Armour Packing Co., 208 Mo. 480.]

We do not believe there is any merit in defendant's claim that the jury was prejudiced by the article published in the Kansas City *Star*. In a case similar in principle the court said: "The matters stated in the article, even if they had been published in either of the papers and read by the jurors before they were selected to try the cause, would not have disqualified them, and certainly the reading of the article thereafter, and while serving as jurors would not itself be sufficient cause for setting aside the verdict of the trial court, or for a reversal of the judgment by this court upon that ground." [Copeland v. Railway Co., 175 Mo. l. c. 679.] And it might be remarked that in this day and time when almost every one reads the newspapers, it would be impracticable to obtain competent juries to try any case that had attracted public attention, if such a test of their qualifications as is required by defendant should obtain.

Notwithstanding we may well believe that the jury were not actuated by prejudice in the making up of their verdict, at the same time it seems to be

Aaron v. Street Railway Co.

clear that they overestimated plaintiff's damages. Plaintiff's lawyers evidently thought so or the remittitur of $5000 would not have been made.

There is no doubt but what plaintiff suffered severe injury which gave him much pain, but we are of the opinion that the evidence disclosed that he was not a man in perfect health prior thereto, but far from it. Reputable witnesses, two of whom were doctors, gave satisfactory evidence that he had been subject to disease before that time. One of the doctors, that he had a fainting spell similar to those which he attributed as the result of his injury. Another doctor that he gave him treatment for a disease the nature of which he declined to disclose.

We would not be justified in closing our eyes to the fact that plaintiff by trying to make it appear that his prior health was perfect, was willingly endeavoring to magnify his injuries so as to enhance his damages, and we are satisfied that he succeeded in his purpose, as evidenced by a verdict of $12,500 in his favor which was so largely excessive that his lawyers entered a remittitur in order to evade a new trial or a reversal of the judgment.

While we cannot but depreciate plaintiff's effort in the direction indicated, yet, we are satisfied that he suffered a real injury for which he is justly entitled to compensation. We are of the opinion under the circumstances that justice requires that there should be a further scaling down of the judgment, and if the plaintiff enters a further remittitur of $2500 within ten days the cause will be affirmed, otherwise, it will stand reversed and remanded. All concur.