THE STATE ex rel. PAUL JONES, JR., and PAUL JONES v. CHARLES H. DAUES et al., Judges of St. Louis Court of Appeals.—13 S. W. (2d) 537.

Division One, February 1, 1929.

*Jones, Hocker, Sullivan & Angert* and *Ralph T. Finley* for relators.

*Charles A. Lich* for respondents.

RAGLAND, J.—This is an original proceeding in certiorari wherein relators seek to have quashed on the ground of conflict of decision the judgment and opinion of the St. Louis Court of Appeals in the case of J. A. Schaefer Construction Company, a corporation, appellant, v. Paul Jones et al., respondents, lately pending in that court on appeal from the St. Louis Circuit Court. The rulings and the facts on which they are based are disclosed by the opinion, which is as follows:

"Plaintiff brought this suit against the defendants to recover for labor performed in excavating for a garage building. The amount sued for was $2659.80, with interest. Defendants Nixon and Keeley, who are residents of the State of Illinois, were not served with process, and the suit as to them was dismissed. Defendant Donaldson was in default and judgment was directed against him by the court. There was a verdict and judgment against the defendants Paul Jones and Paul Jones, Jr. The defendants last named filed their motion for a new trial, and it was sustained by the court on the ground that an instruction in the nature of a demurrer, offered by defendants, should have been given. From this order and judgment plaintiff appealed.

"The petition alleges that defendants Nixon and Keeley are partners under the firm name of Nixon & Keeley Construction Company, and that all of the defendants were engaged in a partnership enterprise in the matter of building and erecting the Donaldson Court Apartments; that they were building the same as partners, and that each of the defendants was to receive an interest in the building when constructed and completed. Plaintiff further alleges that on or about November 5, 1922, having theretofore been engaged and employed by defendants Nixon and Keeley, it proceeded to excavate for a garage building for said apartments; that it performed the work and that the reasonable value of the services was the amount above stated; that the work was accepted by the defendants, but that they failed and refused to pay the bill.

"The answer of the defendants Paul Jones and Paul Jones, Jr., was a general denial, coupled with a specific denial of the allegations of a partnership, and a further plea to the effect that plaintiff is estopped from asserting any claim against these defendants by reason of the fact that it had agreed in writing with the defendant Donaldson to accept second mortgage bonds in payment of the account sued for.

"The first witness to testify for plaintiff was Clark Nixon of the firm of Nixon & Keeley, who had charge of the construction of the Donaldson Court Apartments located in St. Louis County. He testified that this building was started by Charles W. Donaldson, Paul Jones, Paul Jones, Jr., and Nixon & Keeley, and that there was in the beginning no written agreement between the parties, but that the oral agreement was that Donaldson was to do the engineering and supervise the work. Paul Jones and Paul Jones, Jr., were to handle the financing of the enterprise, and Nixon & Keeley, general contractors, had charge of the construction and the employment of subcontractors; that all of the defendants met almost daily and conferred over the progress of the work. The title to the ground on which the building was being built was in an employee of the Paul Jones Realty Company. When the work was completed Nixon & Keeley were to receive one-third of the equity in the property, Donaldson was to receive one-third and the Joneses one-third. Paul Jones and Paul Jones, Jr., secured the money and furnished the loans on the building. Nixon testified that the bill of plaintiff was correct.

"On cross-examination he stated that the total cost of the Donaldson Court Apartment was about $750,000, and that the original plan to divide the equity in the property when the building was completed was later abandoned, because it had been estimated that the cost of construction would only be about $325,000 and when the building was about two-thirds completed it was discovered that it would cost much more than this amount to complete it. When this discovery was made there was an arrangement made between Donald-

son, Paul Jones, Paul Jones, Jr., and Nixon & Keeley, to the effect that the two Joneses were to take over the Garden Court, another apartment building, with certain debts attached to it, and that Donaldson and Nixon & Keeley were to take over the Donaldson Court Apartment with certain debts. Afterwards Nixon & Keeley sold their interest in the Donaldson Court Apartment to Donaldson, taking $36,000 worth of second mortgage bonds for their interest therein. Nixon further testified that he had presented plaintiff's bill to Donaldson two or three times and did not know why Donaldson did not pay it. He also testified that in April or May, 1922, plaintiff had agreed to take second mortgage bonds in payment of his bill; that this was after Donaldson had acquired the building and after the work had been done and the building completed.

"It appears from the testimony that, as originally planned, when these two buildings were completed a corporation was to be organized to hold title to the buildings and equities, divided in the manner heretofore stated.

"J. A. Schaefer, president of the plaintiff company, testified that he did the excavating on the Donaldson Court Apartments in the summer of 1922, and that he also excavated for the garage incident to that building in November, 1922. For the work done in the summer he was paid, but for the work done in November, in excavating for the garage, he had received no pay. He was employed, he said, by Nixon & Keeley, at which time he asked Nixon where the money was coming from to pay him. This was with respect to the first work done. He was told by Nixon that a partnership had been formed between the defendants for the erection of this building and that he would get his pay in that way. He said that he had been promised the mortgage bonds, but that he never received them. This was in March, 1923, after the excavating work for the garages was done. During the progress of the work for which they were paid and when they were paid, they were paid by Nixon of the Nixon & Keeley Construction Company. He said he did not know either of the Joneses in the transaction, personally. He testified that in the spring of 1923 the finances ran out. This was before the Donaldson Court Apartment was completed. Creditors were notified and he attended a meeting of such. At this meeting, according to his understanding, all the sub-contractors, except one, were to go on and finish their part of the work and take second mortgage bonds for the amount due them. This was after plaintiff had finished the work. He testified that his company had agreed, after the meeting, to take the bonds for the balance of their bill, but at the time they agreed to take the bonds they did not know that the defendants had divided their interest in the two apartments. He said that the sub-contractors had agreed to take second mortgage bonds so that additional money could be secured and arrangements made for finishing the building.

"There is no question from the record but that plaintiff agreed to accept the second mortgage bonds.

"Paul Jones and Paul Jones, Jr., in their own behalf, stated that they merely acted as loan agents on the Donaldson Court Apartments, and that as compensation for such they would receive a certain amount of interest in the equity of the building in the nature of stock in the corporation to be formed when the building was completed. The corporation, however, was never formed. They also testified that the ground on which the Donaldson Court Apartments was erected was bought with money received from the proceeds of the second mortgage.

"The evidence clearly shows that the Joneses took over the Garden Court Apartments and that Donaldson and Nixon & Keeley took over the Donaldson Court Apartments, as evidenced by the contract in writing introduced. This agreement between the defendants was made after plaintiff had performed the services for which it sued.

"There are two propositions we are called upon to decide in this case. The first is whether or not the defendants were partners, and the second is, if such partnership existed, is plaintiff prevented from recovering because of its having agreed to accept the second mortgage bonds in payment of this claim. It is unnecessary to refer to a long list of cases to which we may make reference with respect to the issues of partnership. We have gone over this question thoroughly and have arrived at the conclusion that defendants were partners and engaged in a partnership business in the construction and erection of the Donaldson Court Apartments at the time they became liable to plaintiff for the services it performed. It is a well-settled principle of law that where one party contributes the capital and the other the labor and skill for carrying on a joint enterprise, such constitutes a partnership, unless something appears to indicate the absence of a joint ownership of the business and profits. [Nugent v. Armour Packing Co., 208 Mo. 480, 106 S. W. 648; Canty v. Halpin, 294 Mo. 96, 242 S. W. 94; National Bank v. Francis, 296 Mo. 169, 246 S. W. 326; Torbert v. Jeffrey, 161 Mo. 645, 61 S. W. 823.]

"If it appears from the whole contract that the party contributing his services receives a share of the profits merely as compensation for his services, then no partnership exists within the meaning of the law. It is the contention of the defendants Jones and Jones that they were merely financing the construction of this apartment, and were to receive as their fee an equity in the building when completed and, therefore, were not partners in the enterprise, and that no partnership existed between them and Nixon & Keeley and Donaldson.

"From the evidence above set out, we think that it clearly appears that the Joneses were to furnish the capital, Nixon & Keeley were to construct the building, and Donaldson was to supervise the work,

and that they were to share equally in the profits by accepting a one-third interest in the building when it was completed. The title was placed in a straw man, who held it in trust for all the defendants. Thus defendants were to be joint owners of the building and the ground. They were to share in the profits; that much is clearly established by the evidence, and that they were to share in the losses there can be no other reasonable conclusion drawn from the facts as detailed. When the building was completed, each owning one-third interest, they would share one-third of the profits. Owning the building jointly, sharing in the profits equally, what other conclusion could be drawn than that they were to share in the losses equally, in proportion to their respective interests? If this be true, then they were engaged in a partnership business, or to say the least, it was a joint adventure, and while joint adventures are not identical with partnerships, they are governed practically by the same rules of law. [Dierks & Sons Lumber Co. v. Bruce (Mo.), 239 S. W. 133.]

"There being ample evidence from which it could be found that a partnership existed, then the court was wrong in granting a new trial, unless it be that plaintiff, having agreed to accept the second mortgage bonds in payment of the indebtedness, is precluded from recovering. Defendants insist that plaintiff is not entitled to recover by reason of this fact, and that the court was right in granting a new trial for this reason. The trouble with this proposition is that plaintiff was never tendered the bonds, although Nixon testified that he presented the account to Donaldson, but that it was never paid. If the party from whom payment is due in goods or other commodities fails to pay in the particular way specified in the contract, then payment in money can be demanded. [13 C. J. p. 587.] Plaintiff, not having been paid in the manner agreed upon by giving it the amount due in second mortgage bonds, had the right to sue for the amount due it in money.

"After a careful review of the facts in this case and the law applicable thereto, the conclusion is inevitable that the court erred in granting defendants a new trial. Accordingly, the judgment is reversed and the cause remanded with directions to enter judgment on the verdict of the jury."

I. The first ruling of the Court of Appeals alleged to be in conflict with the decisions of this court is that with respect to the existence of a partnership between relators and Donaldson and Nixon & Keeley. It will not be necessary to review at length the decisions of this court as they will be found to be in essential harmony when each is considered in connection with the facts with reference to which it was made. The holdings as to what does and what does not constitute a partnership will be first noted; and then the rulings as to the evidence required to establish,

or take to the jury, the question of whether a partnership *inter sese* exists, when that is in issue in an action brought by a third person against an alleged partner.

(1) In Hughes v. Ewing, 162 Mo. 261, 295, 62 S. W. 465, the following was quoted approvingly from Am. & Eng. Ency. Law:

"In order to constitute a partnership there must be 'community of interest, a sharing in the profits and losses as such, the existence of mutual relationship of principal and agent, and an intention on the part of the persons interested and uniting in the prosecution of the common enterprise, to become and act as partners. These are the proximate tests as to the existence of a partnership between them: what constitutes a partnership being a question of law for the court; while the question as to the existence of the constituent elements of a partnership is one of fact for the jury.'"

In Chapin v. Cherry, 243 Mo. 375, 402, 147 S. W. 1084, a partnership contract as defined by Cyc., was quoted with approval as follows:

"A contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, and to divide the profits and bear the losses in certain proportions."

In other cases it has been said:

"When one party contributes the capital and the other the labor, skill or experience for carrying on a joint enterprise, such a combination constitutes a partnership unless something appears to indicate the absence of a joint ownership of the business and profits." [Torbert v. Jeffrey, 161 Mo. 645, 655, 61 S. W. 823.]

"But it is not sufficient to create a partnership *inter sese* that the parties were to share the profits of a given enterprise or transaction. They must also have *agreed*, that is, *intended* to share the losses and to become partners." [National Bank of Commerce v. Francis, 296 Mo. 169, 192, 246 S. W. 326.]

"It is well settled that the mere participation, by one, in the profits of a transaction or business does not *per se* constitute him a partner therein." [Thompson v. Holden, 117 Mo. 118, 128, 22 S. W. 905.]

" 'A mere participation in the profits and loss does not necessarily constitute a partnership' between the parties so participating. It is a question of intention on the part of the alleged partners and is one which the triers of the fact will have to determine upon all the circumstances proved." [McDonald v. Matney, 82 Mo. 358, 365.]

"An agreement for such participation (in the profits and losses of a joint business or undertaking) is not, however, a conclusive test, and does not absolutely constitute a partnership as a conclusion of law, if other circumstances show that no partnership was intended." [Quoted and approved in Torbert v. Jeffrey, supra, l. c. 655.]

(2) " 'Participation in the profits and losses of a joint business or undertaking affords the usual, and, perhaps, the most cogent test of the existence of an intention to form a partnership. An agreement for such participation is not, however, a conclusive test. . . . It is only prima-facie proof, which may be rebutted by evidence of other facts and circumstances.' [17 Am. & Eng. Ency. Law (1 Ed.) 835a; Donnell v. Harshe, 67 Mo. 170; Musser v. Brink, 68 Mo. 242; McDonald v. Matney, 82 Mo. 358; Kellog Newspaper Co. v. Farrell, 88 Mo. 594; Clifton v. Howard, 89 Mo. 192; Thompson v. Holden, 117 Mo. 118; 1 Bates on Partnership, secs. 25 and 29.]

"And as a community in losses is a necessary corollary of a participation in the profits, a partnership may as well be predicated of an agreement to share *net* profits, as of an agreement to share the profits and losses, and the same rule applies. Hence 'participation in the profits of a business raises a presumption of the existence of a partnership. This presumption is not conclusive, but if not rebutted is sufficient to establish a partnership.' [17 Am. & Eng. Ency. Law (1 Ed.) 841b; Lengle v. Smith, 48 Mo. 276; Philips v. Samuel, 76 Mo. 658; Fourth Nat. Bank v. Altheimer, 91 Mo. 191; 1 Bates on Partnership, sec. 30; Corey v. Cadwell, 86 Mich. 570.]" [Torbert v. Jeffrey, supra, 1. c. 655; Nugent v. Armour Packing Co., 208 Mo. 480, 106 S. W. 648.]

If the Court of Appeals held, as some of its language seems to indicate, that an agreement to participate in the profits and losses of a given enterprise or transaction, constitutes the participants partners *inter sese* as a matter of law, regardless of their actual intentions in that respect, the holding is not in harmony with the decisions of this court just noted. On the other hand, if the holding is that participation in profits, or in both profits and losses, makes a case for the jury on the issue of partnership or no partnership, even though the alleged partner testifies that he was not a partner but merely received a share of the profits as compensation for labor performed or services rendered, there is no conflict. And we so construe the opinion.

It is contended by relators that the facts do not warrant the inference drawn by the Court of Appeals that there was an agreement to share the losses, and that the presumption of partnership arising from an agreement to share the profits is one of the "bats of the law," which takes flight when the facts are disclosed. On these premises the further contention is based that as relators, testifying as witnesses in their own behalf, "stated that they merely acted as loan agents on the Donaldson Court Apartments, and that as compensation for such they would receive a certain amount of interest in the equity of the building in the nature of stock in the corporation to be formed when the building was completed," and as there was no evidence in the case expressly contradicting their testimony,

920

there was nothing upon which to submit the issue of partnership to the jury. "Bats of the law" as applied to presumptions is a strik-ing figure of speech, and for that reason has been somewhat over-worked. Participation in profits is one of the principal incidents of a partnership, hence the presumption. And the presumption *in its character as presumption* may disappear as the trial progresses. But the inference of fact, evidentiary in character, remains. At least this court, with reference to this particular presumption, has not held the contrary. [See Bond v. Railroad, 315 Mo. 987, 288 S. W. 777.] However, in the case dealt with by the Court of Appeals plaintiff did not have to rely solely on a prima-facie case made by evidence of an agreement to share profits; there were other facts and cir-cumstances in proof tending to show a partnership, as the opinion points out.

II. Relators say that they would not have taken over the Garden Court Apartment and personally assumed the payment of large ▉▉▉▉▉ obligations in connection therewith, if the Construction Company had not agreed to take second mortgage bonds on the Donaldson Court Apartment for the balance due them on that building. It does not appear from the statement of facts by the Court of Appeals that relators were induced to assume any obliga-tions for which they were not already liable by the Construction Company's promise to take second mortgage bonds for its debt. But if such were the case, it is not apparent how such promise, under the facts disclosed, operates as an estoppel. The promise to take second mortgage bonds for the debt clearly implied the condition that such bonds be delivered or tendered for acceptance. If relators have been misled to their hurt, it is not the fault of the Construction Company. Nothing appears to indicate that it ever in any wise changed its position with respect to the acceptance of the bonds. It at no time refused to take them. And it would no doubt have accepted them had they been tendered at any time prior to the institution of its suit. The Court of Appeals ruled that under such circumstances the Con-struction Company was not estopped to sue for the debt, and we find no conflict between that ruling and the decisions of this court.

For the reasons indicated in the foregoing our writ should be quashed. It is so ordered. All concur.